## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ADVANCE TRADING, INC. an Illinois, Corporation, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Jury Demand (Counterclaim) |
| | ) | |
| v. | ) | Case No. 1:23-cv-01390 |
| | ) | |
| CRAIG BARONE, CRAIG ROBERTSON, | ) | Hon. Michal M. Mihm |
| FRED DIETZ, BRIAN JACOB, ERIC MEYER | ) | |
| JASON STRAHM, BRENT KIESER, AUSTIN | ) | Hon. Mag. Judge Jonathan E. Hawley |
| ENDRESS, APALIS, LLC and APALIS | ) | |
| COMMODITIES, LLC, an Illinois Limited | ) | |
| Liability Company, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIMS AGAINST PLAINTIFF AND COUNTER CLAIMS AGAINST THE ADVANCE TRADING, INC. 401(K) PLAN AND ESOP AND ITS ADMINISTRATIVE COMMITTEE

NOW COME Defendants Craig Barone, Craig Robertson, Fred Dietz, Brian Jacob, Eric Meyer, Jason Strahm, and Brent Kieser ("Defendants"), by and through their attorney, and for their Answer, states as follows:

1.     Plaintiff is the victim of Defendants' conspiracy to divert corporate assets through a concealed scheme by some of their key employees and a member of the corporate board of directors. Several of the Defendants hid their intent to imminently breach their contractual agreements and steal key customers and then executed on this intent. In doing so, not only did certain Defendants commit fraud, but they also violated their contractual non-compete agreements, and violated their fiduciary duties, among other violations.

### ANSWER:

Defendants deny the allegations of Paragraph 1.

2.     Moreover, certain of the Defendants, former employees of Advance Trading, Inc. ("ATI"), deliberately and fraudulently concealed their impending departure from Plaintiff's employ at the same time that they tendered shares in ATI, causing those shares to be redeemed at an inflated price. Among other things, this misconduct violated federal securities laws, as well as their fiduciary duties to ATI.

1

**ANSWER:**

Defendants deny the allegations of Paragraph 2.

3.    Such conduct also resulted in a breach of fiduciary duty under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and requires certain Defendants to disgorge excess proceeds received as a result of the breach.

**ANSWER:**

Defendants deny the allegations of Paragraph 3.

4.    In redeeming their shares while concealing their impending departure, not only did they wrongfully obtain an inflated payout for those shares, but they also caused others who purchased those shares at the same time to pay more than those shares would have been worth had all material facts been known. This puts Plaintiff at risk of having to provide recompense to those purchasers, for which Defendants should be held liable.

**ANSWER:**

Defendants deny the allegations of Paragraph 4.

5.    Plaintiff, ATI, is an Illinois Corporation with its principal place of business in Bloomington, Illinois conducting business in the field of business risk management associated with agricultural operations and operating a licensed and registered commodities brokerage firm.

**ANSWER:**

Defendants admit the allegations of Paragraph 5.

6.    ATI is the Plan Administrator of the Advance Trading, Inc. 401(k) and ESOP (the "ESOP"), a tax-qualified profit sharing and stock bonus plan subject to applicable provisions of ERISA.

**ANSWER:**

Defendants admit that ATI is identified as the Plan Administrator of the ESOP. Defendants

lack information and knowledge sufficient to form a belief as to whether the ESOP is tax qualified.

7.    Defendant Apalis, LLC ("Apalis") is an Illinois Limited Liability Company with its principal place of business in Peoria, Illinois.

**ANSWER:**

Defendants admits that Apalis is an Illinois Limited Liability Company. Defendants deny the remaining allegations of Paragraph 7.

8.    Defendant Apalis Commodities, LLC ("Apalis Commodities") is an Illinois Limited Liability Company with its principal place of business in East Peoria, Illinois.

**ANSWER:**

Defendants admit the allegations of Paragraph 8.

9.    Defendant Craig Barone ("Barone") is currently an employee of Apalis and Apalis Commodities, and resides in Bettendorf, Iowa. He was employed as a commodities broker by ATI from June 19, 2013, until submitting his written resignation on January 27, 2023.

**ANSWER:**

Defendants admit that Barone is currently an employee of Apalis Commodities, he resides in Bettendorf, Iowa, and he was employed as a commodities broker by ATI from June 19, 2013, until submitting his written resignation on January 27, 2023. Defendants deny the remaining allegations of Paragraph 9.

10.    Defendant Craig Robertson ("Robertson") is currently an employee of Apalis and Apalis Commodities, and resides in Westfield, Indiana. He was employed as a commodities broker by ATI. from August 15, 2015, until submitting his written resignation on January 27, 2023.

**ANSWER:**

Defendants admit that Robertson is currently an employee of Apalis Commodities, he resides in Westfield, Indiana, and he was employed as a commodities broker by ATI from August 15, 2015, until submitting his written resignation on January 27, 2023. Defendants deny the remaining allegations of Paragraph 10.

11.    Defendant Fred Dietz ("Dietz") is currently an employee of Apalis and Apalis Commodities, and resides in Mediapolis, Iowa. He was employed as a commodities broker by ATI from March 12, 2004, until his verbal resignation on January 26, 2023. Dietz served on ATI's Board of Directors from February 18, 2021, through his resignation on January 26, 2023.

**ANSWER:**

Defendants admit that Dietz is currently an employee of Apalis Commodities, he resides in Mediapolis, Iowa, and he was employed as a commodities broker by ATI from March 12, 2004, until submitting his written resignation on January 27, 2023. Defendants also admit that Dietz serviced on ATI's Board of Directors from February 18, 2021, through his resignation from the Board on January 26, 2023. Defendants deny the remaining allegations of Paragraph 11.

12.    Defendant Brian Jacob ("Jacob") is currently an employee of Apalis and Apalis Commodities, and resides in Bettendorf, Iowa. He was employed as a commodities broker by ATI from January 27, 2020, until submitting his written resignation on January 27, 2023.

**ANSWER:**

Defendants admit that Jacob is currently an employee of Apalis Commodities, he resides in Bettendorf, Iowa, and he was employed as a commodities broker by ATI from January 27, 2020, until submitting his written resignation on January 27, 2023. Defendants deny the remaining allegations of Paragraph 12.

13.    Defendant Eric Meyer ("Meyer") is currently an employee of Apalis and Apalis Commodities, and resides in Princeton, Illinois. He was employed as a commodities broker by ATI from February 1, 2017, until submitting his written resignation on January 27, 2023.

**ANSWER:**

Defendants admit that Meyer is currently an employee of Apalis Commodities, he resides in Princeton, Illinois, and he was employed as a commodities broker by ATI from February 1, 2017, until submitting his written resignation on January 27, 2023. Defendants deny the remaining allegations of Paragraph 13.

14.    Defendant Jason Strahm ("Strahm") is currently an employee of Apalis and Apalis Commodities, and resides in Edwards, Illinois. He was employed as a commodities broker by ATI from January 1, 2000, until submitting his written resignation on January 27, 2023.

**ANSWER:**

Defendants admit that Strahm is currently an employee of Apalis Commodities, he resides in Edwards, Illinois, and he was employed as a commodities broker by ATI from January 1, 2000, until submitting his written resignation on January 27, 2023. Defendants deny the remaining allegations of Paragraph 14.

15.    Defendant Brent Kieser ("Kieser") is currently an employee of Apalis and Apalis Commodities, and resides in Brimfield, Illinois. He was employed as a commodities broker by ATI from January 20, 2003, until January 26, 2023. Kieser served on ATI' s Board of Directors from February 22, 2017, to February 22, 2022.

**ANSWER:**

Defendants admit that Kieser is currently an employee of Apalis Commodities, he resides in Brimfield, Illinois, and he was employed as a commodities broker by ATI from January 20, 2003, until submitting his written resignation on January 27, 2023. Defendants deny the remaining allegations of Paragraph 15.

16.    Defendant Austin Endress ("Endress") is the organizer and registered Manager Member of Apalis and Apalis Commodities, and resides in East Peoria, Illinois.

**ANSWER:**

Defendants admits that Endress is the organizer and registered Manager Member of Apalis and Apalis Commodities. Defendants deny the remaining allegations of Paragraph 16.

17.    The allegations of this Complaint revolve around actions taken in this district by Defendants.

**ANSWER:**

Defendants admits that Plaintiff has alleged that Defendants have engaged in certain conduct within this district, but deny the remaining allegations of Paragraph 17.

18.    Plaintiff is bringing claims pursuant to Securities Exchange Act of 1934 Section 10(b), 15 U.S.C. § 78j, and SEC Rule 10b-5 promulgated thereunder, 17 CFR §240.10b-5, ERISA § 502(a)(2), 29 USC § 1132(a)(2) and ERISA § 502(a)(3), 29 USC § 1132(a)(3). This Court has

subject matter jurisdiction over these claims under 28 USC § 1331 as they arise under the laws of the United States.

**ANSWER:**

Defendants admit that Plaintiff has asserted claims under the referenced statutes and regulations and that this Court has federal question jurisdiction. Defendants deny the remaining allegations of Paragraph 18.

19.    Pursuant to 28 USC § 1367(a), this Court has supplemental jurisdiction over the remaining claims and defendants brought under the Illinois statutory and common law because they are so related to the claims asserted under federal law that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:**

Defendants admit the allegations of Paragraph 19.

20.    Venue is proper pursuant to 28 USC § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

**ANSWER:**

Defendant admits that venue is proper in the U.S. District Court for the Central District of Illinois. Defendant denies the remaining allegations of Paragraph 20.

21.    Dietz had a valid non-compete as part of his employment agreement with ATI. Attached hereto and incorporated herein as Exhibit "A" is a copy of that non-compete. Among other things, that non-compete provided that:

> Broker acknowledges that ATI will expend considerable time and expense in training broker for ATI. In consideration of that training and in consideration of employment with ATI, while Broker is an employee of ATI and for a period of two (2) years thereafter, Broker shall not, either as an individual on his own account, or as a partner, joint venture, employee, agent, officer, director, or shareholder, directly or indirectly:

> Enter into or engage in any business competitive with that of ATI within any area in which ATI is then doing business (which the parties agree is an area within a 100-mile radius from any ATI office of branch office), as Broker will have access to ATI's trade secrets and confidential information during the course of his employment with ATI; or

Solicit or attempt to solicit or have any contract with any of ATI' s customers with the intent or purpose to perform services for such customers which are the same or similar to those provided to the customers by ATI; or

Solicit or attempt to solicit or have any contact with any potential customers of ATI if such potential customers are or were identified through leads or contacts developed during the course of Broker's employment with ATI, with the intent or purpose to perform services for such customers which are the same or similar to those provided to the customers by ATI."

**ANSWER:**

Defendants admit that Dietz executed an agreement with ATI entitled, Confidentiality and Non-Competition Agreement ("Agreement A"). Defendants deny that Agreement A is valid and enforceable. Defendants also deny that the quoted language of this paragraph is consistent with the actual text set forth in Agreement A.

22.    Jacob had a valid non-compete as part of his employment agreement with ATI. Attached hereto and incorporated herein as Exhibit "B" is a copy of that non-compete. Among other things, that non-compete provided that:

"14. <u>Restrictive Covenant</u>: Broker acknowledges and agrees that ATI has expended and/or will expend considerable time and expense in orienting, training, and supporting Broker to perform the duties of a broker. In consideration of ATI' s significant investment of time and expense in orienting, training, and supporting Broker, Broker agrees to enter into a restrictive covenant with ATI. Specifically, whether as an individual on his own account or as a partner, joint venture participant, employee, agent, officer, director, or shareholder of any other business or entity, Broker shall not directly or indirectly do any of the following upon termination of his employment with ATI for any reason whatsoever (resignation, termination, etc.) for a period including both (a) the balance of any calendar month within which Broker's employment with ATI terminates, and (b) eighteen (18) consecutive months commencing on the first day of the calendar month following the day upon which Broker's employment with ATI terminates:

A.    Broker shall not solicit, attempt to solicit, or have any contact whatsoever with any "Customer" of ATI with the purpose or intent to either (a) perform services (including the business of risk management or consulting) for the Customer, or (b) sell to the Customer (or refer Customer to some other provider that offers or sells) products that are the same or substantially similar to those products or services that were provided or offered by ATI at any time during Broker's employment with ATI.

7

B.     Broker shall not solicit, attempt to solicit, or have any contact whatsoever with an "Prospective Customer" of ATI with the purpose or intent to perform services or sell products to such Prospective Customers that are the same or substantially similar to those products or services that were provided by ATI to its customers at any time during Broker's employment at ATI.

C.     Notwithstanding the language contained in the foregoing restrictive covenant paragraphs, the provisions of this Agreement do not forbid Broker from providing risk management services directly for a subsequent employer that is not in competition with ATI. By way of example, the restrictive covenant provisions of this Agreement would not prohibit Broker from accepting employment as a trader or manager of an ethanol plant, irrespective of whether the plant had been or was a current customer of ATI at the time of Broker's separation from ATI."

**ANSWER:**

Defendants deny the allegations of Paragraph 22.

23.     Meyer had a valid non-compete as part of his employment agreement with ATI Attached hereto and incorporated herein as Exhibit "C" is a copy of that non-compete. Among other things, that non-compete provided that:

"14. Restrictive Covenant: Broker acknowledges and agrees that ATI has expended and/or will expend considerable time and expense in orienting, training, and supporting Broker to perform the duties of a broker. In consideration of All's significant investment of time and expense in orienting, training, and supporting Broker, Broker agrees to enter into a restrictive covenant with ATI.

Specifically, whether as an individual on his own account or as a partner, joint venture participant, employee, agent, officer, director, or shareholder of any other business or entity, Broker shall *not* directly or indirectly do any of the following upon termination of his employment with ATI for any reason whatsoever (resignation, termination, etc.) for a period including both (a) the balance of any calendar month within which Broker's employment with ATI terminates, and (b) eighteen (18) consecutive months commencing on the first day of the calendar month following the day upon which Broker's employment with ATI terminates:

A.     Broker shall not solicit, attempt to solicit, or have any contact whatsoever with any "Customer" of ATI with the purpose or intent to either (a) perform services (including the business of risk management or consulting) for the Customer, or (b) sell to the Customer (or refer the Customer to some other provider that offers or sells) products that are the same or substantially similar to those products or services that were

8

provided or offered by ATI at any time during Broker's employment with ATI.

B.      Broker shall not solicit, attempt to solicit, or have any contact whatsoever with an "Prospective Customer" of ATI with the purpose or intent to perform services or sell products to such Prospective Customers that are the same or substantially similar to those products or services that were provided by ATI to its customers at any time during Broker's employment at ATI.

C.      Notwithstanding the language contained in the foregoing restrictive covenant paragraphs, the provisions of this Agreement do not forbid Broker from providing risk management services directly for a subsequent employer that is not in competition with ATI. By way of example, the restrictive covenant provisions of this Agreement would not prohibit Broker from accepting employment as a trader or manager of an ethanol plant, irrespective of whether the plant had been or was a current customer of ATI at the time of Broker's separation from ATI."

**ANSWER:**

Defendants deny the allegations of Paragraph 23.

24.     Upon information and belief, all Defendants were aware that Dietz, Meyer, and Jacob were subject to valid and enforceable non-competes.

**ANSWER:**

Defendants deny the allegations of Paragraph 24.

25.     Kieser and Endress's knowledge, as member/managers of Apalis and Apalis Commodities, was imputed to the entities on whose behalf they acted.

**ANSWER:**

Defendants deny the allegations of Paragraph 25.

26.     Upon information and belief, with Endress's knowledge and approval, Kieser met on behalf of Apalis and Apalis Commodities with Dietz, Barone, Strahm, Robertson, Jacob, and Meyer, and offered them employment, knowing they were still employed by ATI and subject to non-competes.

**ANSWER:**

Defendants deny the allegations of Paragraph 26.

27.    On or about January 26, 2023, Dietz and Kieser requested to have lunch with ATI Board President Curt Strubhar, Board member Michael Reginelli, and Chief Operating Officer Drew Moore, and orally informed them that were resigning their positions, and that Barone, Robertson, Jacob, Meyer, and Strahm would also be resigning to work for a new company in the same field and that they intended to take their clients with them to the new company. Dietz and Kieser further informed ATI on January 26, 2023 that four broker's assistants would be resigning from ATI to go work for them at Apalis and Apalis Commodities.

**ANSWER:**

Defendants admit that Dietz and Kieser requested to have lunch with Strubhar, Reginelli,

and Moore and informed them that they would be resigning on or about January 26, 2023.

Defendants deny the remaining allegations of Paragraph 27.

28.    Following this oral resignation, Dietz, Kieser, Strahm, Barone, Robertson, Jacob, and Meyer (the "Resigning Defendants") and the four broker's assistants all submitted written letters of resignation on January 27, 2023.

**ANSWER:**

Defendants admit the allegations of Paragraph 28.

29.    None of these above Defendants disclosed that they had been working with the Apalis entities prior to their resignations, in order to help establish Apalis and Apalis Commodities as a direct competitor to ATI. Their resignation directly followed the approval of Apalis Commodities to act as a licensed and registered commodities brokerage firm by the National Futures Association.

**ANSWER:**

Defendants admit that their resignation followed the approval of Apalis Commodities to

act as a licensed and registered commodities brokerage firm by the National Futures Association.

Defendants deny the remaining allegations of Paragraph 29.

30.    On April 12, 2022, Apalis was registered with the Illinois Secretary of State. Endress was the organizer, while Kieser and Endress were both listed as member/managers.

**ANSWER:**

Defendants admit that Endress executed the Form LLC-5.5 (Articles of Organization) on

April 11, 2022, on behalf of Ledgestone Financial Services, later renamed Apalis, LLC.

Defendants admit that the Form LLC-5.5 was filed with the Illinois Secretary of State on or around April 12, 2022, and that Kieser and Endress were listed as managers or members with the authority of managers on those Articles. Defendants deny the remaining allegations of Paragraph 30.

31.    Andrew Jenks was also listed as a member/manager of Apalis. Andrew Jenks is one of the owners of Jenks Farms who was at that time one of the ten largest income generating clients service by ATI.

**ANSWER:**

Defendants admit that Andrew Jenks was listed as a manager or member with the authority of a manager on the Articles of Organization of Apalis, and that Andrew Jenks is an owner of Jenks Farms. Defendants lack information and knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 31.

32.    On June 16, 2022, Apalis filed for a trademark for the name of Apalis with the USPTO citing that it planned on using the name in business risk management associated with agricultural operations.

**ANSWER:**

Defendants admit the allegations of Paragraph 32.

33.    Apalis Commodities was organized with the State of Illinois by Endress on September 25, 2022, and Endress was listed as its sole manager.

**ANSWER:**

Defendants admit that Endress executed the Form LLC-5.5 on September 23, 2022, on behalf of Apalis Commodities, LLC, and that such form was filed shortly thereafter. Defendants deny the remaining allegations of Paragraph 33.

34.    Apalis Commodities filed for NFA approval as a licensed and registered commodities brokerage firm on December 5, 2022, and this application was approved on January 25, 2023.

**ANSWER:**

Defendants admit the allegations of Paragraph 34.

35.    Endress was listed as a manager of both Apalis, and Apalis Commodities.

**ANSWER:**

Defendants admit the allegations of Paragraph 35.

36.    The day after Apalis Commodities received NFA approval, Dietz and Kieser informed ATI that Barone, Kieser, Dietz, Strahm, Jacob, Meyer, and Robertson were resigning from ATI.

**ANSWER:**

Defendants admit the allegations of Paragraph 36.

37.    Dietz had to be told that he needed to resign his position from the Board of Directors and submitted a handwritten resignation on January 26, 2023.

**ANSWER:**

Defendants admit that the Board of Directors told Dietz that he needed to formally resign

to make his resignation official, despite Dietz's clear intention to resign as part of his resignation

as an employee, and that Dietz submitted a resignation on January 26, 2023. Defendants deny the

remaining allegations of Paragraph 37.

38.    Dietz, Jacob, and Meyer all had valid and enforceable non-competes with ATI.

**ANSWER:**

Defendants deny the allegations of Paragraph 38.

39.    Since their resignations, Dietz, Meyer, and Jacob have been employed by Apalis and Apalis Commodities as brokers and have been involved in the solicitation and servicing of ATI clients in violation of their non-compete agreements.

**ANSWER:**

Defendants admit that Dietz, Meyer, and Jacob have been employed by Apalis

Commodities since their resignations. Defendants deny the remaining allegations of Paragraph 39.

40.    In October 2022, Dietz and Kieser approached a current ATI broker in an attempt to recruit him to leave ATI and to join Apalis Commodities upon his departure, in violation of his non-compete agreement.

**ANSWER:**

Defendants deny the allegations of Paragraph 40.

41.    This broker also had a valid and enforceable non-compete with ATI.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of

the allegations of Paragraph 41.

42.    In order to conceal their plans from their then-current employer, Dietz and Kieser
made this broker sign an NDA regarding those discussions. This broker remains an ATI employee.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to whether an

unidentified broker remains an ATI employee. Defendants deny the remaining allegations of

Paragraph 42.

43.    On information and belief, Kieser and Endress engaged in recruitment of ATI
employees to leave employment and join Apalis and Apalis Commodities early in the spring of
2022, and made those employees sign NDA's.

**ANSWER:**

Defendants deny the allegations of Paragraph 43.

44.    On May 9, 2022, Kieser tendered 250 shares of ATI from inside the ESOP for
repurchase by ATI. This repurchase was approved by the Board on May 10, 2022.[1]

**ANSWER:**

Defendants admit that Kieser tendered 250 shares of ATI stock from inside the ESOP on

or around May 9, 2022. Defendants lack information and knowledge sufficient to form a belief as

to when the Board approved the repurchase and how many shares were repurchased from inside

---

[1] ATI repurchased 222 shares from inside the ESOP from employees and former employees in May, August, and
September of 2022 at $2,358.00 per share. ATI is currently unaware of the extent of the Defendants' plan to violate
their non-compete agreements, steal ATI's client and breach their fiduciary duties as of the date of those
transactions.

the ESOP in May, August, and September of 2022, at what price, and what ATI is/was or is/was not aware of. Defendants deny the remaining allegations of Paragraph 44, including those in the footnote thereto.

45.     In December of every year, ATI offers shares of its stock for sale to its employees. It offers these shares to its employees both through the ESOP, and it also makes shares available for purchase outside of the ESOP.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 45.

46.     As of December 21, 2022, ATI had 11,502 outstanding shares, 9,586 of which were held within the ESOP and 1,916 of which were held outside the ESOP. ATI currently has 11,498 outstanding shares.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 46.

47.     Brokers who are in the top percentages of producers at ATI are restricted to only buying shares outside of the ESOP.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 46.

48.     Under ERISA, an ESOP cannot purchase or sell any shares other than at fair market value. Consequently, the price of these shares is set by the ESOP trustee after the performance of an evaluation performed by an independent appraiser. ATI and the ESOP use an annual valuation performed every September to establish the fair market value per share for the ATI shares.

**ANSWER:**

Defendants deny that ERISA prohibits an ESOP from purchasing or selling any shares other than at fair market value. Defendants lack information and knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 48

14

49.     If the Board has information indicating the most recent appraisal does not reflect fair market value for the shares, neither the ESOP nor ATI could sell or purchase any shares.

**ANSWER:**

Defendants deny the allegations of Paragraph 49.

50.     In December 2022, the price of shares as set by ATI's ESOP trustee pursuant to the September valuation was $2,798.00 per share. Paragraph 11 of ATI's Stock Transfer Restriction and Shareholder Agreement (which all shareholders sign) establishes that the price for all ATI shares (both for transactions within and outside the ESOP,) will be set by the most recent ESOP stock appraisal and valuation. Attached hereto and incorporated herein as Exhibit "D" is a copy of the Stock Transfer Restriction and Shareholder Agreement.

**ANSWER:**

Defendants admit that pursuant to the September 2022 valuation report ATI shares were valued at $2,798.00 per share, and that Paragraph 11 of ATI's Stock Transfer Restriction and Shareholder Agreement as set forth in Exhibit D to the Complaint provides that the price ATI shall pay for shares "shall be the latest value established by the most recent ATI ESOP stock appraisal and valuation." Defendants lack information and knowledge sufficient to form a belief as to whether all shareholders sign the ATI Stock Transfer Restriction and Shareholder Agreement, or whether Paragraph 11 applies to transactions within the ESOP.

51.     It is customary for ATI shareholders to tender some of their shares for repurchase by the company contemporaneously with ATI's offering of shares for purchase.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 51.

52.     Pursuant to ERISA ATI employees are allowed to tender shares at any time of the year, but ATI is under no obligation to repurchase them at that time.

**ANSWER:**

Defendants deny the allegations of Paragraph 52.

53.     As of December 21, 2022:

    (a)     Barone owned 150 shares inside the ESOP and 120 shares outside the ESOP;

    (b)     Kieser owned 5 shares inside the ESOP and 395 shares outside the ESOP;

    (c)     Dietz owned 360 shares inside the ESOP and 40 shares outside the ESOP;

    (d)     Strahm owned 257 shares inside the ESOP and 284 shares outside the ESOP;

    (e)     Meyer owned 4 shares outside the ESOP; and

    (f)     Robertson owned 40 shares inside the ESOP and 54 shares outside the ESOP.

**ANSWER:**

Defendants admit that the Defendants identified above tendered the shares identified in Paragraph 53.

54.     On December 21, 2022, Barone, Kieser, Dietz, and Strahm (the "Tendering Defendants") all tendered approximately a third of their shares in ATI, with:

    (a)     Barone tendering 100 shares inside the ESOP;

    (b)     Kieser tendering 112 shares outside the ESOP;

    (c)     Dietz tendering 130 shares inside the ESOP; and

    (d)     Strahm tendering 100 shares inside the ESOP and 85 shares outside the ESOP. Attached hereto and incorporated by reference as Exhibit "E" are copies of the Tenders of Shares of Common Stock.

**ANSWER:**

Defendants admit that the Tendering Defendants tendered the shares identified in Paragraph 54.

55.     On December 30, 2022, ATI purchased 660 shares of stock, $1,846,680.00 in total from seven shareholders at the price of $2,798.00 per share, and purchased stock representing roughly 13% of Tendering Defendants' total shares in ATI.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 55.

56.    Specifically, ATI purchased:

(a)    40 shares from BARONE that were held inside the ESOP;

(b)    47 shares from KIESER that were held outside the ESOP;

(c)    52 shares from DIETZ that were held inside the ESOP;

(d)    74 shares from STRAHM that were held outside the ESOP; and

(e)    447 shares from two retired employees and another current employee of ATI, all from inside the ESOP.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegation that ATI purchased 447 shares from two retired employees and another current employee of ATI, all from inside the ESOP. ATI admits the remaining allegations of this Paragraph 56.

57.    Contemporaneously ATI sold 656 shares of ATI' s stock to current employees totaling $1,835,488.00 in total. As a consequence of Defendants' failure to disclose their impending departure, ATI's shareholders were damaged by overpaying $648,128.00 for the shares they purchased in December 2022. ATI is potentially obligated to compensate shareholders for these overpayments.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegation that ATI contemporaneously sold 656 shares of ATI stock to current employees totaling $1,835,488.00 in total. Defendants deny the remaining allegations of Paragraph 57.

58.    These transactions were approved by ATI's Board of Directors on December 22, 2022.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of

the allegations in Paragraph 58.

59.    Shockingly, Dietz was at this meeting and was asked directly whether there was anything to be concerned about so many employees asking to redeem such a large portion of their shares, which was unusual. At that time, the remaining board members asked Dietz on multiple occasions if there was anything they needed to be made aware of regarding Tendering Defendants all tendering significant portions of their stock.

**ANSWER:**

 Dietz admits that he was asked whether there was anything to be concerned about.

Defendants deny the remaining allegations of Paragraph 59.

60.    Dietz responded each time in the negative, providing multiple reassurances to the remaining board members that as far as he knew there was nothing ATI needed to know of regarding Barone, Dietz, Kieser, and Strahm all tendering significant portions of their shares for repurchase.

**ANSWER:**

Defendants admit that Dietz responded in the negative as to whether there was anything to

be concerned about regarding employees selling shares. Defendants deny the remaining allegations

of Paragraph 60.

61.    This was a deliberate lie. Not only did Dietz know that these employees were all planning on leaving their employer and taking with them as many corporate opportunities as possible, he himself was planning to do the same, in concert with the other employees.

**ANSWER:**

Defendants deny the allegations of Paragraph 61.

62.    On the date the Defendants verbally resigned, they informed ATI that they coordinated with each other to tender a similar portion of their stock prior to their resignations.

**ANSWER:**

Defendants deny the allegations of Paragraph 62.

63.    To date, Apalis Commodities has taken clients that the seven departed brokers serviced while employed by ATI, causing $2,858,389.00 of ATI's 2022 contributions to profits to be transferred to Apalis with a significant part of those clients departing within two weeks of Defendants' departure.

**ANSWER:**

Defendants deny the allegations of Paragraph 63.

64.    Jenks Farms has left ATI and taken its business to Apalis and Apalis Commodities.

**ANSWER:**

Defendants admit the allegations of Paragraph 64.

65.    ATI will suffer continuous additional losses of contributions to profits and revenues due to the actions of Defendants taking ATI clients to Apalis Commodities.

**ANSWER:**

Defendants deny the allegations of Paragraph 65.

66.    After the Resigning Defendants' resignations, ATI directed its Trustee to obtain a new appraisal for the value of the stock.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 66.

67.    That valuation was dated as of March 31, 2023.

**ANSWER:**

Defendants admit that a valuation report dated March 31, 2023, was obtained by Plaintiff.

68.    The ESOP Trustee approved the new valuation report on July 10, 2023.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 68.

69.    The new share value for ATI's stock is $1,810.00.

**ANSWER:**

Defendants admit that the March 31, 2023, valuation report concluded that fair market value of a non-marketable, controlling interest in the common stock of ATI as of the Valuation Date was $1,810.00. The defendants deny the remaining allegations of Paragraph 69.

70.     The independent appraisal report as March 31, 2023, cited the departure of Resigning Defendants, their actions in taking customers, and the impact it will have on long term profits as the primary reason for the decrease in share value.

**ANSWER:**

Defendants deny the allegations of Paragraph 70.

71.     Had Resigning Defendants intended departure been disclosed to ATI, or if Dietz had been truthful when questioned, ATI would not have repurchased any shares in December 2022, or sold any shares to employees in December 2022.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 71.

72.     Had Resigning Defendants intended departure been disclosed, or if Dietz had been truthful, ATI would not have sold or purchased any shares until an independent valuation could have been performed that accounted for their departure.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 72.

73.     This newly assessed share value is reflective of the value of ATI as of the date the shares were tendered by the Tendering Defendants, with the decrease in value being measured as of the earliest date the measurement was practically ascertainable.

**ANSWER:**

Defendants deny the allegations of Paragraph 73.

74.     Resigning Defendants were employees of ATI at all relevant times.

**ANSWER:**

Defendants admit that they were employees of ATI from their respective start dates with ATI until submitting their resignations on January 27, 2023. Defendants deny the remaining allegations of Paragraph 74.

74.     75.     Under Illinois law, employees have a duty of loyalty to their employers to act solely for the benefit of their employers in all matters connected to their employment.

**ANSWER:**

The allegations in this paragraph are legal conclusions without factual context. To the extent a response is required, Defendants deny the allegations of Paragraph 75.

76.     This duty extends to using knowledge acquired during their employment for their own benefit and against the interest of their employer, and by hiding facts or information that involve their employer's interest.

**ANSWER:**

The allegations in this paragraph are legal conclusions without factual context. To the extent a response is required, Defendants deny the allegations of Paragraph 76.

77.     As such, Defendants had a duty to disclose all material facts related to their employment which would negatively affect ATI' s interests.

**ANSWER:**

The allegations in this paragraph are legal conclusions without factual context. To the extent a response is required, Defendants deny the allegations of Paragraph 77.

78.     At all relevant times, Dietz was a Board Member of ATI' s Board of Directors. Under Illinois law, as a board member he owed ATI a fiduciary duty, which included a duty to disclose all material facts and to act in ATI' s best interests at all times. Moreover, ATI placed Dietz in a position of confidence and trust.

**ANSWER:**

Defendants admit that Dietz was a Board Member from February 18, 2021, through January 26, 2023. Defendants deny the remaining allegations of Paragraph 78.

79.    In addition to these obligations, under Illinois law a duty to disclose may arise when one party has superior knowledge and access to material facts and fails to disclose them when the other party cannot discover them through the exercise of due diligence.

**ANSWER:**

The allegations in this paragraph are legal conclusions without factual context. To the extent a response is required, Defendants deny the allegations of Paragraph 79.

80.    Tendering Defendants were the only parties involved in the December 2022 stock transaction aware of Defendants' impending departure and plan to take business with them.

**ANSWER:**

Defendants deny the allegations of Paragraph 80, and expressly deny that their departure was impending at the time of the December 2022 stock transaction and that they "planned" to take business with them.

81.    In the recruitment of brokers to leave ATI to work for Apalis Commodities, Defendants had prospective brokers sign Non-Disclosure Agreements to ensure their silence.

**ANSWER:**

Defendants deny the allegations of Paragraph 81.

82.    ATI could not have known of Defendants' intentions, as they were not disclosed and were uniquely within their knowledge, and Defendants had used non-disclosure agreements to ensure the silence of brokers they had attempted to recruit.

**ANSWER:**

Defendants deny the allegations of Paragraph 82.

83.    A duty to disclose material facts also arises when one party to a transaction takes active steps to conceal material facts.

**ANSWER:**

The allegations in this paragraph are legal conclusions without factual context. To the extent a response is required, Defendants deny the allegations of Paragraph 83.

84.    The Defendants' active concealment of their departure also created a duty to disclose these material facts associated with their departure.

**ANSWER:**

Defendants deny the allegations of Paragraph 84, and expressly deny any affirmative intention to depart ATI prior to receiving approval by the National Futures Association of Apalis Commodities to act as a licensed and registered commodities brokerage firm, an approval that was never guaranteed.

85.    A duty to disclose material facts under Illinois law may also arise from a confidential relationship in which one party is placed in a position of influence and superiority over plaintiff, by reason of friendship, agency, or experience. ATI had reposed trust in Tendering Defendants based on their long affiliation with it and their position within ATI.

**ANSWER:**

The allegations in this paragraph are legal conclusions without factual context. To the extent a response is required, Defendants deny the allegations of Paragraph 85.

86.    At the time of his resignation, Dietz had been employed as a broker by ATI for almost 19 years and had been an ATI shareholder for almost 17 years.

**ANSWER:**

Defendants admit the allegations of Paragraph 86.

87.    At the time of his resignation, Barone had been employed as a broker by ATI for 10 years and had been an ATI shareholder for eight years.

**ANSWER:**

Defendants admit the allegations of Paragraph 87.

88.    At the time of his resignation, Strahm had been employed as a broker by ATI for 23 years and had been an ATI shareholder for 20 years.

**ANSWER:**

Defendants admit the allegations of Paragraph 88.

89.    At the time of his resignation, Kieser had been employed as a broker by ATI for 20 years and had been an ATI shareholder for almost 18 years.

**ANSWER:**

Defendants admit the allegations of Paragraph 89.

90.     Resigning Defendants worked as brokers for ATI as part of its branch business, i.e. brokers who did not operate out of ATI's home office in Bloomington, Illinois.

**ANSWER:**

Defendants admit the allegations of Paragraph 90.

91.     Resigning Defendants primarily worked apart from ATI's principal place of business without daily direct supervision from ATI.

**ANSWER:**

Defendants admit the remaining allegations of Paragraph 91.

92.     Barone and Kieser were ATI's largest two contributors to profits from all its brokers.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 92.

93.     ATI placed Tendering Defendants in a position of trust due to the length of their employment history, their length of time as shareholders their history of acting independently, and their significant long-term production as employees.

**ANSWER:**

Defendants deny the allegations of Paragraph 93.

94.     ATI brokers in the aggregate contributed $11,721,000.00 towards its profits in 2022.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 94.

95.     Resigning Defendants contributed $2,858,389.00 to ATI's profits in 2022.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 95.

96.    This represented 24.4% of all contributions to profits, before overhead costs, for ATI in 2022.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 96.

97.    ATI branches contributed $5,589,516.00 towards its contribution to profits in 2022.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 97.

98.    Resigning Defendants represented 51% of ATI's contribution to profits from its branches in 2022.

**ANSWER:**

Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 98.

99.    The impending departure of brokers who contributed 24.4% of all broker contributions to profits with the intention to take their business with them was a material fact that was deliberately concealed.

**ANSWER:**

Defendants deny the allegations of Paragraph 99.

100.    The impending departure of brokers contributing 51% of all branch business contributions to profits with the intention to take their business with them was a material fact that was deliberately concealed.

**ANSWER:**

Defendants deny the allegations of Paragraph 100.

101.    The departure of ATI' s two largest contributors to profits from all brokers, with the intention to take their business with them was a material fact that was deliberately concealed.

**ANSWER:**

Defendants deny the allegations of Paragraph 101.

### COUNT I: SECURITIES FRAUD
### (As Against Defendant Dietz)

Defendants are separately filing a Motion to Dismiss Count I of the Complaint, and therefore make no answer to the allegations in that Count.

### COUNT II: SECURITIES FRAUD
### (As Against Defendants Barone, Strahm And Kieser)

Defendants are separately filing a Motion to Dismiss Count II of the Complaint, and therefore make no answer to the allegations in that Count.

### COUNT III - ERISA BREACH OF FIDUCIARY DUTY
### (As Against Defendant Dietz)

Defendants are separately filing a Motion to Dismiss Count III of the Complaint, and therefore make no answer to the allegations in that Count.

### COUNT IV - ERISA OTHER EQUITABLE RELIEF
### (As Against Defendants Dietz, Barone, Strahm, And Kieser)

Defendants are separately filing a Motion to Dismiss Count IV of the Complaint, and therefore makes no answer to the allegations in that Count.

## COUNT V — BREACH OF CONTRACT
### (As Against Defendants Dietz, Meyer And Jacob)

Defendants are separately filing a Motion to Dismiss Count V of the Complaint, and therefore makes no answer to the allegations in that Count.

## COUNT VI — FRAUD BY AFFIRMATIVE REPRESENTATION
### (As Against Defendant Dietz)

Defendants are separately filing a Motion to Dismiss Count VI of the Complaint, and therefore makes no answer to the allegations in that Count.

## COUNT VII — FRAUDULENT CONCEALMENT
### (As Against Defendants Dietz, Barone, Strahm, And Kieser)

Defendants are separately filing a Motion to Dismiss Count VII of the Complaint, and therefore makes no answer to the allegations in that Count.

## COUNT VIII - BREACH OF FIDUCIARY DUTY
### (As Against Defendant Dietz)

Defendants are separately filing a Motion to Dismiss Count VIII of the Complaint, and therefore make no answer to the allegations in that Count.

## COUNT IX - INDUCEMENT TO BREACH OF FIDUCIARY DUTY
### (As Against Defendants Barone, Strahm, Kieser, Endress, Apalis, And Apalis Commodities)

Defendants are separately filing a Motion to Dismiss Count IX of the Complaint, and therefore makes no answer to the allegations in that Count.

## COUNT X - BREACH OF EMPLOYEE DUTY OF LOYALTY
### (As Against Defendants Dietz, Barone, Robertson, Jacob, Meyer, Strahm, And Kieser)

Defendants are separately filing a Motion to Dismiss Count X of the Complaint, and therefore makes no answer to the allegations in that Count.

## COUNT XI — TORTIOUS INTERFERENCE WITH CONTRACT
### (As Against All Defendants)

Defendants are separately filing a Motion to Dismiss Count XI of the Complaint, and therefore makes no answer to the allegations in that Count.

## COUNT XII — CIVIL CONSPIRACY
### (As Against All Defendants)

Defendants are separately filing a Motion to Dismiss Count X of the Complaint, and therefore makes no answer to the allegations in that Count.

## COUNT XIII — CONSTRUCTIVE TRUST
### (As Against All Defendants)

Defendants are separately filing a Motion to Dismiss Count X of the Complaint, and therefore makes no answer to the allegations in that Count.

## <u>COUNTERCLAIM</u>

### FRED DIETZ, CRAIG BARONE, CRAIG ROBERTSON, BRIAN JACOB, ERIC MEYER, JASON STRAHM, and BRENT KIESER v. ADVANCE TRADING INC., an Illinois Corporation, THE ADVANCE TRADING, INC. 401(K) PLAN AND ESOP, and its <u>ADMINISTRATIVE COMMITTEE</u>

Defendants/Counter-Plaintiffs Fred Dietz, Craig Barone, Craig Robertson, Brian Jacob, Eric Meyer, Jason Strahm, Brent Kieser (collectively as "Counter-Plaintiffs") counterclaims against Plaintiff/Counter-Defendant Advance Trading, Inc. ("ATI") and Defendants, the Advance Trading, Inc. 401(k) Plan and ESOP (the "ESOP") and its Administrative Committee (collectively, the "Defendants"), as follows:

**NATURE OF THE ACTION**

1.    This Counterclaim seeks to recover that which is owed to Counter-Plaintiffs pursuant to the expressed terms of the Advance Trading, Inc. Stock Transfer Restriction and Shareholder Agreement ("Shareholder Agreement").

2.    This Counterclaim also seeks damages incurred by Counter-Plaintiffs for false and defamatory comments made by ATI and/or its agents and/or employees to clients of ATI and/or Apalis with respect to the Counter-Plaintiffs.

3.    This Counterclaim also seeks redress for the ESOP's and its fiduciaries' breaches of fiduciary duty under ERISA insofar as such fiduciaries failed to satisfy their respective disclosure obligations under ERISA, failed to follow the terms of the ESOP with respect to the Counter-Plaintiffs who are ESOP participants, and failed to prudently provide adequate and/or accurate valuations in accordance with the law.

**PARTIES**

4.    ATI is an Illinois Corporation with its principal place of business in Bloomington, Illinois, conducting business in the field of business risk management associated with agricultural operations and operating a licensed and registered commodities brokerage firm.

5.    As of December 31, 2022, ATI employed 46 brokers in the same or similar position as that resigned by the Counter-Plaintiffs.

6.    ATI is the Plan Administrator and Plan Sponsor of the ESOP.

7.    The ESOP's Administrative Committee is charged with carrying out the administrative functions of the ESOP on behalf of ATI.

8.    The ESOP is subject to applicable provisions of the Employee Retirement Income Security Act of 1974, as amended, and guidance issued thereunder ("ERISA"), and the Internal Revenue Code of 1986, as amended, and guidance issued thereunder (the "Code").

9.      The ESOP was originally established as a profit sharing plan on January 1, 1984, by ATI, and was last amended and restated effective January 1, 2017. A true and accurate copy of the current plan document governing the ESOP is attached hereto as Exhibit A. A true and accurate copy of the ESOP's current Summary Plan Description is attached hereto as Exhibit B.

10.     ATI or its Board of Directors appointed an Administrative Committee ("Committee") to administer the ESOP in accordance with the terms of the ESOP.

11.     Among numerous duties set forth under the ESOP, pursuant to Section 12.2i.1. thereof, the ESOP's Committee directs the ESOP Trustee with regard to making distributions from the ESOP Trust, and determining whether benefits will be paid thereunder.

12.     Counter-Plaintiff Fred Dietz ("Dietz") was employed by ATI from March 12, 2004, until January 27, 2023.

13.     Counter-Plaintiff Craig Barone ("Barone") was employed by ATI from June 19, 2013, until January 27, 2023.

14.     Counter-Plaintiff Craig Robertson ("Robertson") was employed by ATI from August 15, 2015, until January 27, 2023.

15.     Counter-Plaintiff Brian Jacob ("Jacob") was employed by ATI from January 27, 2020, until January 27, 2023.

16.     Counter-Plaintiff Eric Meyer ("Meyer") was employed by ATI from February 1, 2017, until January 27, 2023.

17.     Counter-Plaintiff Jason Strahm ("Strahm") was employed by ATI from January 1, 2000, until January 27, 2023.

18.     Counter-Plaintiff Brent Kieser ("Kieser") was employed by ATI from January 20, 2003, until January 27, 2023.

## JURISDICTION AND VENUE

19.    Counter-Plaintiffs bring claims under ERISA based on actions taken or failed to be taken by ATI. This Court has jurisdiction over such actions under ERISA Sections 502(e)(1) and 502(f) (29 U.S.C. §§ 1132(e), 1132(f)).

20.    This action may also be brought before this Court pursuant to 28 U.S.C. § 1331, which provides subject matter jurisdiction over actions that arise under the laws of the United States.

21.    Counter-Plaintiffs bring claims under Illinois law based on actions taken in this district by ATI. This Court may exercise supplemental jurisdiction over the Illinois law counterclaims pursuant to 28 U.S.C. § 1367(a), because the counterclaims are so related to ATI's claims that they form part of the same case or controversy under Article III of the United States Constitution.

22.    Venue is proper in the Central District of Illinois pursuant to 28 U.S.C. § 1391 and ERISA Section 502(e)(2) (29 U.S.C. 1132(e)(2)) because the Plan is administered in this District, and a substantial part of the events or omissions giving rise to Counter-Plaintiffs' claims occurred within this District.

## STATEMENT OF FACTS

23.    Counter-Plaintiffs Barone, Kieser, Dietz, Strahm, and Robertson currently are ESOP participants, as defined under ERISA Section 3(7) (29 U.S.C. 1002(7)), and were ESOP participants during their employment with ATI in December 2022.

24.    ATI provides certain individuals the opportunity to purchase or otherwise receive shares of ATI stock outside of the ESOP pursuant to the terms of the Shareholder Agreement.

25.     Section 11 of the Shareholder Agreement, as set forth in Exhibit D to the Complaint and more fully below, provides that the price ATI shall pay for shares "shall be the latest value established by the most recent ATI ESOP stock appraisal and valuation."

26.     Prior to December 21, 2022, the latest ESOP appraisal and valuation report was dated September 30, 2022, and valued ATI stock at $2,798.00 per share. A true and accurate copy of the ESOP's valuation report, dated September 30, 2022, is attached hereto as Exhibit C.

27.     As of December 21, 2022, Barone, Kieser, Dietz, Strahm, Meyer, and Robertson owned shares in ATI as follows:

> (a)     Barone owned 150 shares inside the ESOP and 120 shares outside the ESOP;
>
> (b)     Kieser owned 5 shares inside the ESOP and 395 shares outside the ESOP;
>
> (c)     Dietz owned 360 shares inside the ESOP and 40 shares outside the ESOP;
>
> (d)     Strahm owned 257 shares inside the ESOP and 284 shares outside the ESOP;
>
> (e)     Meyer owned 4 shares outside the ESOP; and
>
> (f)     Robertson owned 40 shares inside the ESOP and 54 shares outside the ESOP.

28.     On December 21, 2022, Kieser and Strahm tendered to ATI shares for purchase by ATI in accordance with the Shareholder Agreement, as follows:

> (a)     Kieser tendered 112 shares; and
>
> (b)     Strahm tendered 85 shares.

29.     Pursuant to the terms of the Shareholder Agreement, and based on a per share value of $2,798.00, the value of Kieser's tendered shares as of December 21, 2022, was $313,376.00.

27.     Pursuant to the terms of the Shareholder Agreement, and based on a per share value of $2,798.00, the value of Strahm's tendered shares as of December 21, 2022, was $237,830.00.

28.     In response to the tendering of shares on December 21, 2022, ATI purchased shares as follows:

    (a)     ATI purchased 47 shares from Kieser (or 41.96% of those tendered) at $2,798.00 per share, for a total of approximately $131,506; and

    (b)     ATI purchased 74 shares from Strahm (or 87.06% of those tendered) at $2,798.00 per share, for a total of approximately $207,052.00).

29.     ATI did not provide explanation as to why it purchased only a portion of the shares tendered outside the ESOP.

30.     The Counter-Plaintiffs submitted written resignations of their employment with ATI on January 27, 2023.

31.     Section 1 of the Shareholder Agreement (Shares Subject to this Agreement) provides that all shares of ATI stock issued as of or after the date of the Shareholder Agreement (*i.e.*, May 25, 2005) are subject to the terms and provisions of the Shareholder Agreement.

32.     Section 4 of the Shareholder Agreement (Duty to Sell Stock to ATI Upon Termination of Employment) provides, in relevant part, the following:

> ATI employees who own ATI stock, either in their individual names or in their ATI ESOP accounts, must sell their ATI stock back to ATI upon termination of their employment, regardless of the reason for termination, including the death of the employee. ATI must purchase the stock upon termination of employment upon the terms and conditions set forth in Paragraph 11 below. If the stock being purchased is from the shareholder's ATI ESOP account, the sale price and terms shall be as provided for in the ATI ESOP Plan.

33.     Section 11 of the Shareholder Agreement (Purchase of Stock from Shareholders by ATI) provides, in relevant part, the following:

> When ATI is required to purchase stock from its shareholders pursuant to Paragraphs 4, 5, or 6 above, the purchase shall be upon the following terms and conditions:
>
> **A.  Purchase Price.** The price ATI shall pay for the stock shall be the latest value established by the most recent ATI ESOP stock appraisal

and valuation. Should either ATI or the shareholder ... believe the most recent ATI ESOP stock appraisal and valuation does not accurately reflect the current value of ATI's stock, either party may, at its expense, have an updated ESOP stock appraisal and valuation completed by the person or entity used by ATI to conduct its annual ESOP stock appraisal and valuation. The party requesting such an update must do so within 30 days of the date of employment termination or the date the shareholder served written notice upon ATI of his desire to sell stock...

**B.   Payment of Purchase Price.** Any shares of stock being purchased by ATI from a shareholder's ATI ESOP account shall be purchased upon the terms and conditions provided for in the ATI 401(k) Plan and ESOP as from time to time amended... Any shares of stock being purchased by ATI which are not in a shareholder's ATI ESOP account shall be paid for in full within 90 days of: 1) the date of the shareholder's death; 2) termination of employment; or 3) written notice by the shareholder to ATI to purchase the stock, whichever event is applicable.

34.     Pursuant to the above, and all other relevant terms of the Shareholder Agreement, ATI was required to purchase the stock of the Counter-Plaintiffs within 90 days of their resignation, or termination of employment.

35.     ATI has not purchased any of the ATI shares held outside of the ESOP from Counter-Plaintiffs since their resignation on January 27, 2023.

36.     ATI did not request an updated ESOP stock appraisal and valuation within 30 days of the date of termination of the Counter-Plaintiffs.

37.     Pursuant to the terms of the Shareholder Agreement, the Counter-Plaintiffs shares were valued at $2,798.00 as of the date they were to be repurchased under the Shareholder Agreement.

38.     Counter-Plaintiffs continue to hold shares of ATI outside the ESOP as follows:

(a)     Barone owns 120 shares outside the ESOP;

(b)     Kieser owns 348 shares of ATI outside the ESOP;

(c)     Dietz owns 40 shares of ATI outside the ESOP;

(d)     Strahm owns 210 shares of ATI outside the ESOP;

(e)    Meyer owns 4 shares of ATI outside the ESOP; and

(f)    Roberston owns 54 shares of ATI outside the ESOP.

39.    ATI historically has paid dividends at various points during a year. Since January 27, 2023, ATI has paid dividends with respect to outstanding ATI shares.

40.    Although Counter-Plaintiffs are current shareholders, they have not been provided information about their shares inside or outside of the ESOP since terminating their employment. Since January 27, 2023, ATI has not paid dividends with respect to shares held by Counter-Plaintiffs.

41.    Since January 27, 2023, ATI has repurchased shares outside of the ESOP from individuals who have tendered shares to ATI as a result of termination of employment or otherwise.

42.    Section 5.1.c. of the ESOP (Exhibit A) provides the following:

> While employed by the Employer, a Participant may move Qualifying Employer Securities out of his Account only as a result of a purchase of Qualifying Employer Securities by the Employer or the Plan. Except as provided under Section 5.1.d, while a Participant is employed by the Employer, neither the Employer nor the Plan shall be obligated to sell to or purchase from such Participant's Account any Qualifying Employer Securities.

43.    Section 15 of the ESOP's Summary Plan Description (Exhibit B) provides the following:

> The Company may adopt procedures whereby active participants may purchase and all participants may sell Company Stock from time to time. After the annual valuation has been conducted, the Plan Administrator may notify you of a window period during which you may elect to use your account balances not invested in Company Stock to purchase Company Stock as [sic] its then appraised fair market value. Likewise, during such window period you may elect to sell your Company Stock for cash. The cash is then invested as you direct. [...]
>
> In addition, if you terminate employment and remain invested in Company Stock on the December 31 on or immediately after your termination, the Committee has the option to direct that some or all of your Company Stock

account be converted to cash, which you can then reinvest in other available investments.

44.    Section 13.12 of the ESOP, entitled "Uniformity," provides that "All provisions of this Plan shall be interpreted and applied in a uniform, nondiscriminatory manner."

45.    On December 21, 2022, Barone, Dietz, and Strahm tendered ATI shares inside the ESOP for purchase by the ESOP in accordance with its terms, as follows:

(a)    Barone tendered 100 shares inside the ESOP;

(b)    Dietz tendered 130 shares inside the ESOP; and

(c)    Strahm tendered 100 shares inside the ESOP.

46.    In response to the tendering of shares inside the ESOP on December 21, 2022, the ESOP purchased shares as follows:

(a)    The ESOP purchased 40 shares from Barone (or 40% of those tendered);

(b)    The ESOP purchased 52 shares from Dietz (or 40% of those tendered); and

(c)    The ESOP purchased zero shares from Strahm (or 0% of those tendered).

47.    Neither the ESOP nor its Administrative Committee, or ATI provided explanation as to why only a portion of the shares tendered in December 2022 inside the ESOP were purchased from the Counter-Plaintiffs.

48.    In December of 2022, the ESOP purchased 447 shares from two retired employees and another current employee of ATI, at $2,798.00 per share.

49.    Based on information and belief, with respect to the 447 shares purchased from the two retired employees and another current employee of ATI in December 2022, the ESOP purchased 100% of the shares tendered by at least one of those individuals who was an owner or former owner of ATI.

50.     The owner or former owner whose shares were purchased by the ESOP pursuant to the preceding was a "highly compensated employee," as defined under 26 U.S.C. 414(q).

51.     At some point after Counter-Plaintiffs resigned from ATI on January 27, 2023, and before July 10, 2023, ATI and/or the ESOP requested an interim updated valuation with respect to the ESOP shares.

52.     ERISA and the Tax Code require ESOP fiduciaries to conduct prudent and fair valuations, which includes not blindly accepting independent valuations without question or scrutiny.

53.     That valuation report, which was dated March 31, 2023, and sent to ATI and/or the ESOP with a certification dated July 7, 2023, concluded that value of ATI stock as of March 31, 2023, was $1,810.00 per share.

54.     The March 31, 2023, valuation represents approximately a 35% reduction in share value when compared to the September 2022 valuation report, which is attached hereto as Exhibit E.

55.     The March 31, 2023, valuation report attributes the significant loss in value almost entirely to the departure of the Counter-Plaintiffs, based on information provided to the valuation advisors by ATI.

56.     According to the March 31, 2023, valuation, based on information provided by ATI, the valuation advisor removed 90% of total earnings generated by the Counter-Plaintiffs, and two other brokers not named in ATI's instant lawsuit, were removed from ATI's historical earnings stream.

57.     According to the March 31, 2023, valuation, ATI also assumed that ATI would retain just 18.53% of the customers who were serviced by the brokers who resigned in 2023.

58.    The 90% reduction in total earnings used for purposes of the updated valuation, as reported to the valuation advisor by ATI and/or the ESOP does not accurately reflect the earnings lost by ATI as a result of the departure of the Counter-Plaintiffs, which is far less than the 90% as represented by ATI.

59.    Neither ATI nor the ESOP, or its Administrative Committee sought a second opinion on the March 31, 2023, valuation.

60.    Neither ATI nor the ESOP, or its Administrative Committee conducted an independent investigation as to the results of the March 31, 2023, valuation.

61.    Neither ATI nor the ESOP, or its Administrative Committee conducted a review as to the qualifications of the valuation advisor that performed the March 31, 2023, valuation.

62.    Neither ATI nor the ESOP, or its Administrative Committee sought a second opinion or conducted an independent investigation as to the results of any valuation performed by the firm that valued the ATI and/or the ESOP shares in any of the five years preceding 2023.

63.    ATI has not purchased any of the shares held inside the ESOP from Barone, Kieser, Dietz, Strahm, and Robertson since their resignation on January 27, 2023, nor has it given them the opportunity to sell those shares.

64.    Since January 27, 2023, ATI and/or the ESOP purchased ATI shares from ESOP participants other than the Counter-Plaintiffs.

65.    Since January 27, 2023, ATI, the ESOP, and/or the Administrative Committee has notified and given participants, not including the Counter-Plaintiffs, the right to sell ATI shares inside the ESOP in accordance with the terms of the ESOP.

66.    On or around September 25, 2023, attorney Derek Schryer, on behalf of Counter-Plaintiffs, requested several documents related to the ESOP in accordance with Section 104(b)(4) of ERISA, as set forth in the letter attached hereto as Exhibit D.

67.    Section 104(b)(4) of ERISA provides as follows:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.

68.    On or around October 23, 2023, the ESOP's attorney responded to that request for information by including certain of the documents requested, but excluding several of the documents requested, as set forth in the letter attached hereto as Exhibit E, including copies of any agreement between the ESOP and/or ATI with several service providers, including Lowery Asset Consultants, the identity of all individuals and institutions that served as a Plan fiduciary on or after December 31, 2019,  and the identity of all distributions of employer securities allocated to Plan participants since December 31, 2019.

69.    On or around December 20, 2023, attorney Schryer renewed his request for the documents that had not been included in the initial response from the ESOP, explaining why the Counter-Plaintiffs were entitled to such documents under applicable law. That correspondence is attached hereto as Exhibit F.

70.    Following that December 20, 2023, correspondence, the parties executed a non-disclosure agreement regarding the ESOP valuations from 2019 through March 2023, and those valuations were shared with attorney Schreyer on or around December 22, 2023.

71.     The ESOP has not responded to Schreyer's other disputed requests since Schreyer's December 20, 2023, correspondence. Those requests remain outstanding.

72.     Upon information and belief, since the Counter-Plaintiffs' departure from ATI, ATI and/or its agents and employees have orally communicated to multiple current and former clients that some or all of the Counter-Plaintiffs are "going to jail," asserting that the Counter-Plaintiffs have engaged in criminal activities for which convictions would be forthcoming.

73.     Upon information and belief, since the Counter-Plaintiffs' departure from ATI, ATI and/or its agents and employees have stated to certain Apalis clients that Apalis is "not doing well" financially or otherwise, calling into question the Counter-Plaintiffs' ability to perform in their profession.

## COUNT I – Breach of Contract (Common Law)
### (Against ATI)

74.     Counter-Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-73 of this Counterclaim with the same force and effect as if fully set forth herein.

75.     ATI is subject to the terms of the Shareholder Agreement, the terms of which are valid and binding on ATI and the Counter-Plaintiffs.

76.     All shares of ATI stock are subject to the terms of the Shareholder Agreement.

77.     The Shareholder Agreement required that ATI repurchase the shares of the Counter-Plaintiffs held outside of the ESOP within 90 days of their resignation, or termination of employment.

78.     The Shareholder Agreement required that ATI repurchase the shares held by Counter-Plaintiffs outside the ESOP at $2,798.00 per share.

79.     ATI failed to purchase Counter-Plaintiffs shares outside of the ESOP, thereby violating the unambiguous terms of the Shareholder Agreement.

80.     ATI has failed to pay dividends on shares held by the Counter-Plaintiffs since their departure on January 27, 2023.

81.     Counter-Plaintiffs have performed all acts required of them to fully implement and carry out the terms and provisions of the Shareholder Agreement.

82.     Counter-Plaintiffs have suffered a financial harm as a result of ATI's failure to perform in accordance with the terms of the Shareholder Agreement, due to the fact that they have not been paid that which is owed to them with respect to the shares held outside the ESOP, and the interest thereon.

WHEREFOR, Counter-Plaintiffs request that this Court find that ATI breached the Shareholder Agreement, and enter an Order:

A.     Requiring that ATI repurchase all of Counter-Plaintiffs' shares of ATI held outside of the ESOP at a purchase price of $2,798.00 per share, as provided by the Shareholder Agreement, plus reasonable interest calculated from April 27, 2023 (90 days from the date of termination of employment) through the date of payment with respect to shares held outside of the ESOP.

B.     Requiring that ATI pay to Counter-Plaintiffs any dividends that should have been paid on ATI shares between January 27, 2023, and the present, plus interest; and

C.     Awarding Counter-Plaintiffs any and all other relief to which they may be entitled.

### COUNT II – Defamation *per se* (Common Law)
(Against ATI)

83.     Counter-Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-82 of this Counterclaim with the same force and effect as if fully set forth herein.

84.     Current ATI employees, including its officers and directors, have made false and defamatory statements about Counter-Plaintiffs to certain of ATI's employees and to certain of ATI's

current and/or former clients, including current clients of Apalis, to the effect that all or some of the Counter-Plaintiffs were "going to jail" for their actions associated with their resignation from ATI.

85.    Such statements made by current ATI agents and/or employees are defamatory *per se*, as such statements impute to the Counter-Plaintiff the commission of a criminal offense.

86.    The false and defamatory *per se* statements were published to third parties, such as Apalis and ATI clients and business relationships, to harm Counter-Plaintiffs' reputations.

87.    ATI employees made the false and defamatory statements knowing they are false or with reckless disregard for their truth or falsity.

WHEREFOR, Counter-Plaintiffs request that this Court enter an Order:

A. Awarding damages in an amount sufficient to punish ATI and to deter others from similar conduct;

B. Permanently enjoining ATI and its employees from making such false or defamatory statements against Counter-Plaintiffs;

C. Awarding Counter-Plaintiffs attorneys' fees and costs of suit; and

D. Awarding Counter-Plaintiffs any and all other relief to which they may be entitled.

**COUNT III – Breach of Fiduciary Duty for Failure to Follow Plan Terms (ERISA)**
(Against all Defendants)

88.    Counter-Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-87 of this Counterclaim with the same force and effect as if fully set forth herein.

89.    ERISA Section 402(a)(1) (29 U.S.C. 1102(a)(1)) requires that every employee benefit plan, including the ESOP, be established and maintained pursuant to a written instrument.

90.    ERISA Section 404(a)(1)(D) (29 U.S.C. 1104(a)(1)(D)) requires that fiduciaries discharge their duties solely in the interests of participants and beneficiaries, and in accordance with the documents and instruments governing the plan.

91.     ERISA Section 502(a)(3) (29 U.S.C. 1132(a)(3), under which this claim is brought,
provides a cause of action for participants to enjoin any act or practice which violates any
provisions of Title I of ERISA or the terms of the plan, or to obtain other equitable relief.

92.     ATI is the plan administrator and a named fiduciary with respect to the ESOP.

93.     The Administrative Committee is charged with carrying out the administrative
functions of the ESOP on behalf of ATI, and as a result is a fiduciary of the ESOP.

94.     Section 12.2 of the ESOP provides the following:

> The ESOP Trustee, in the exercise of each and every power or discretion
> vested in them by the Plan, shall be governed by the principle that no
> discrimination in favor of highly compensated employees who are
> Participants from time to time hereunder shall result and shall (subject to
> the applicable provisions of the Act) discharge their duties with respect to
> the Plan solely in the interest of the Participants and Beneficiaries.

95.     Section 13.12 of the ESOP provides that "All provisions of this Plan shall be
interpreted and applied in a uniform, nondiscriminatory manner."

96.     The ESOP's Summary Plan Description on page 7 provides the following:

> After the annual valuation has been conducted, the Plan Administrator may
> notify you of a window period during which you may elect to use your
> account balances not invested in Company Stock to purchase Company
> Stock as [sic] its then appraised fair market value. Likewise, during such
> window period you may elect to sell your Company Stock for cash. The
> cash is then invested as you direct.

97.     By refusing to purchase all of the shares tendered by Counter-Plaintiffs inside the
ESOP in December 2022, while purchasing all or most of the shares offered by other participants,
including highly compensated participants and/or former founders/owners in December 2022, and
by refusing to purchase shares held inside the ESOP by Counter-Plaintiffs after January 27, 2023,
ATI and the ESOP Trustee have breached their obligation to discharge their duties solely in the
interests of participants and beneficiaries and in accordance with the documents and instruments
governing the plan.

98.     Further, by giving ESOP participants that do not include the Counter-Plaintiffs the opportunity to sell ATI shares inside the ESOP since January 27, 2023, but not providing the same opportunity to sell to the Counter-Plaintiffs, ATI and the ESOP have breached their obligation to discharge their duties solely in the interests of participants and beneficiaries and in accordance with the documents and instruments governing the plan.

99.     ERISA Section 502(g)(1) (29 U.S.C. 1132(g)(1)) provides that a court in its discretion may allow a reasonable attorney's fee and costs of action to either party in any action brought under Section 502.

WHEREFOR, Counter-Plaintiffs request that this Court find that ATI breached its fiduciary duties under ERISA for failing to follow the terms of the ESOP, and enter an Order:

A.   Requiring ATI to operate the ESOP in accordance with its terms by requiring ATI and/or the ESOP to repurchase Counter-Plaintiffs shares tendered in December 2022 for an amount reflecting the applicable valuation, which shall be conducted in a prudent and good faith manner;

B.   Requiring that ATI and/or the ESOP repurchase all of Counter-Plaintiffs' shares of ATI held inside the ESOP at a purchase price that reflects the applicable valuation, which shall be conducted in a prudent and good faith manner;

C.   Awarding Counter-Plaintiffs attorneys' fees and costs of suit to recover that which was owed to Counter-Plaintiffs under the ESOP; and

D.   Awarding Counter-Plaintiffs any and all other relief to which they may be entitled.

**COUNT IV – Breach of Fiduciary Duty for Failure to Adequately Value ATI Shares and Prudently Oversee Valuation (ERISA)**
(Against All Defendants)

100.    Counter-Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-99 of this Counterclaim with the same force and effect as if fully set forth herein.

101.    ERISA Section 404 (29 U.S.C. 1104) requires fiduciaries of employee benefit plans to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims."

102.    Department of Treasury regulations require that ESOP valuations be made in good faith and based on all relevant factors for determining the fair market value of employer securities.

103.    ATI is the plan administrator and a named fiduciary with respect to the ESOP.

104.    The Administrative Committee is charged with carrying out the administrative functions of the ESOP on behalf of ATI, and as a result is a fiduciary of the ESOP.

105.    ATI and the Administrative Committee failed to discharge their duties prudently either by allowing valuations prior to March 2023 to be artificially inflated, or by providing unsubstantiated, incomplete, and/or inaccurate information to the ESOP's valuation advisory firm, knowing that it would substantially devalue the employer securities held by and within the ESOP in an excessive manner.

106.    ATI and the Administrative Committee failed to discharge their duties prudently by failing to prudently and independently conduct an investigation of the circumstances then prevailing that provided the basis for the fair market value of the employer securities held by and within the ESOP prior to and as a result of the March 2023 valuation, or even questioning the valuation, despite the March 2023 valuation concluding that the value of employer securities decreased by approximately 35% in only six months due almost solely to the departure of nine of ATI's 46 brokers.

107.    ATI also failed to discharge its duties prudently by failing to investigate the qualifications of the valuation firm, and by accepting the substantially reduced valuation price per the March 2023 valuation without negotiation or question, and without attempting to test it, or any prior valuations, through a second review.

108.    ERISA Section 502(a)(1)(B) (29 U.S.C. 1132(a)(1)(B)) permits a participant to bring a civil action to, among other things, recover benefits due to him under the terms of his plan and to enforce his rights under the terms of the plan.

109.    ERISA Section 502(a)(3) (29 U.S.C. 1132(a)(3) permits participants to bring a civil action to enjoin any act or practice which violates any provisions of Title I of ERISA or the terms of the plan, or to obtain other equitable relief.

110.    ERISA Section 502(g)(1) (29 U.S.C. 1132(g)(1)) provides that a court in its discretion may allow a reasonable attorney's fee and costs of action to either party in any action brought under Section 502.

WHEREFOR, Counter-Plaintiffs request that this Court find that ATI breached its fiduciary duties under ERISA, and enter an Order:

A.  Finding that ATI breached its fiduciary duties under ERISA for failing to conduct a prudent valuation of the ATI shares held by and within the ESOP in good faith;

B.  Directing ATI and/or the ESOP to revalue the employer securities held within the ESOP in a prudent manner, by obtaining a valuation from at least one valuation firm that is independent of the firm that provided the past several valuations for the ESOP;

C.  Awarding Counter-Plaintiffs attorneys' fees and costs of suit to recover that which was owed to Counter-Plaintiffs under the ESOP; and

D.  Awarding Counter-Plaintiffs any and all other relief to which they may be entitled.

**COUNT V – Breach of Fiduciary Duty for the Failure to Supply Requested Information (ERISA)**
(Against the ESOP and the Administrative Committee)

111.    Counter-Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-110 of this Counterclaim with the same force and effect as if fully set forth herein.

112.    ERISA Section 502(a)(1)(A) (29 U.S.C. 1132(a)(1)(A)) provides a cause of action for participants to obtain relief provided for under ERISA Section 502(c).

113.    ERISA Section 502(c) (29 U.S.C. 1132(c)) provides that any administrator who fails or refuses to comply with a request for information which such administrator is required by Title I of ERISA to furnish to a participant by mailing such information to the participant within 30 days after such request is made, may be personally liable to such participant "in the amount of up to $100 per day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."

114.    ERISA Section 104(b)(4) (29 U.S.C. 1024(b)(4)) requires a plan administrator to furnish to a participant upon written request, among other things, "other instruments under which the plan is established or operated."

115.    Counter-Plaintiffs, through an attorney, requested numerous documents and other instruments under which the ESOP was established or operated pursuant to ERISA Section 104(b)(4) by letter dated September 25, 2023.

116.    ATI has not provided the documents requested as of the date of this Counterclaim.

117.    ATI is the plan administrator and a named fiduciary with respect to the ESOP.

118.    The Administrative Committee is charged with carrying out the administrative functions of the ESOP on behalf of ATI, and as a result is a fiduciary of the ESOP.

119.    ERISA Section 502(g)(1) (29 U.S.C. 1132(g)(1)) provides that a court in its discretion may allow a reasonable attorney's fee and costs of action to either party in any action brought under Section 502.

WHEREFOR, Counter-Plaintiff Barone request that this Court find that ATI breached its fiduciary duties under ERISA, and enter an Order::

A.  Requiring that the ESOP provide the documents requested by Barone's September 25, 2023 letter.

B.  Requiring that the ESOP pay to Barone an amount determined to be appropriate by this Court pursuant to ERISA Section 502(c).

C.  Awarding Counter-Plaintiffs attorneys' fees and costs of suit to recover that which is owed to Barone pursuant to the foregoing; and

D.  Awarding Barone any and all other relief to which he may be entitled.

Dated:  January 19, 2024

FRED DIETZ, CRAIG BARONE, CRAIG
ROBERTSON, BRIAN JACOB, ERIC
MEYER, JASON STRAHM, BRENT
KIESER, Defendants

By:    /s/Brian K. Jackson
       Brian K. Jackson

Brian K. Jackson
LANER MUCHIN, LTD.
515 North State Street, Suite 2400
Chicago, IL 60654
(312) 467-9800
(312) 467-9429 (fax)

Attorney for Defendants FRED DIETZ,
CRAIG BARONE, CRAIG ROBERTSON,
BRIAN JACOB, ERIC MEYER, JASON
STRAHM, and BRENT KIESER.

4864-8948-8281, v. 2

## CERTIFICATE OF SERVICE

I, Brian K. Jackson, an attorney, hereby certify that on January 19, 2024, I caused to be served a copy of the foregoing in the above-captioned matter to be filed with the Clerk of the District Court and served on the parties of record, including those listed below, by operation of the Court's CM/ECF electronic filing system, addressed to:

> Michael G. Butts
> Wood, DeVary, Armstrong & Houska, P.C.
> 207 West Jefferson Street, Suite 400
> Bloomington, Illinois 61701
> mbutts@wdalawyers.com
> Phone: (309) 827-0044
> Fax: (309) 829-0328

> */s/ Brian K. Jackson*
> Brian K. Jackson

4864-8948-8281