**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ADVANCE TRADING, INC. an Illinois, Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-01390 |
| | ) | |
| CRAIG BARONE, CRAIG ROBERTSON, | ) | U.S. District Court Judge Michael M. Mihm |
| FRED DIETZ, BRIAN JACOB, ERIC MEYER | ) | |
| JASON STRAHM, BRENT KIESER, AUSTIN | ) | U.S. Magistrate Judge Jonathan E. Hawley |
| ENDRESS, APALIS, LLC and APALIS | ) | |
| COMMODITIES, LLC, an Illinois Limited | ) | |
| Liability Company, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BARONE, ROBERTSON, DIETZ, JACOB, MEYER, STRAHM, AND
KIESER MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(B)(6)**

Brian K. Jackson
Chad R. DeGroot
Laner Muchin, Ltd.
515 N. State Street, Suite 2400
Chicago, Illinois 60654
bjackson@lanermuchin.com
cdegroot@lanermuchin.com
Phone: (312) 467-9800

## Table of Contents

I.    Introduction ................................................................................................ 1

II.   Legal Standard And argument ................................................................... 2

    A.   12(b)(6) Motion To Dismiss For Failure To State A Claim ................................. 2

    B.   Count I (against Dietz) And Count II (against Barone, Strahm, and Kieser)
Should Be Dismissed Because Plaintiff Fails To State a Claim Under Federal
Securities Law ........................................................................................... 2

    C.   Count III (against Dietz) Should Be Dismissed Because Dietz Was Not
Acting In A Fiduciary Capacity, Plaintiff Fails to Adequately Allege A
Breach Of A Fiduciary Duty, Plaintiff Has No Standing To Sue Under
ERISA 409(a), And Because the Claim is Not Ripe for Adjudication. ............... 10

    D.   Count IV (against Dietz, Barone, Strahm, and Kieser) Should Be Dismissed
Because Dietz Violated No Fiduciary Duties And Because the Defendants
Against Whom Count IV Is Brought Cannot be Liable For The Claims
Alleged. .................................................................................................... 17

    E.   Count V (against Dietz, Meyer, and Jacob) Should Be Dismissed Because
The Restrictive Covenants At Issue Are Unenforceable, There Has Been No
Plausible Claim Pled, And Blue Penciling Is Not Appropriate. ....................... 19

    F.   Count VI (against Dietz) And Count VII (against Dietz, Barone, Strahm, and
Kieser) Should Be Dismissed Because Alleged Fraudulent Representations
About Future Conduct Are Not Actionable And Because There Is No Duty
To Provide Advance Notice Of The Termination Of At-Will Employment. ........ 23

    G.   Count VIII (against Dietz) Should Be Dismissed For Not Satisfying Rule 9(b)
And Because The Facts Admitted By Plaintiff Defeat Its Claim. ..................... 25

    H.   Count IX (against Barone, Strahm, Kieser) And Count X (against all
Defendants) Should Be Dismissed Because Preparing To Compete Is Lawful
Conduct in the State of Illinois. .................................................................. 28

    I.    Count XI (against all Defendants) Should Be Dismissed Because The Three
Restrictive Covenants At Issue Are Unenforceable And No Actionable
Breach Has Been Alleged. .......................................................................... 29

    J.    Count XII (against all Defendants) Should Be Dismissed Because The
Complaint Fails To Plead Viable Anchoring Claims In Support Of The Civil
Conspiracy Claim ..................................................................................... 30

    K.   Count XIII (against all Defendants) should be Dismissed because it is not an
Actionable Claim and is not a viable Remedy in this Matter. ........................ 30

III.  CONCLUSION ......................................................................................... 31

## Table of Authorities

**Cases**

*3Com Corp. v. Electronic Recovery Specialists, Inc.*, 104 F. Supp. 2d 932 (N.D. Ill. 2000)....... 30

*Adams v. City of Peoria*, No. 14-1415, 2015 U.S. Dist. LEXIS 142456 (C.D. Ill. Jan. 9, 2015) ........................................................................................................................................ 25

*Allied Waste Servs. of N. Am., LLC v. Tibble*, 177 F. Supp. 3d 1103 (N.D. Ill. 2016)................ 19

*Anchor Bank, FSB v. Hofer*, 649 F.3d 610 (7th Cir. 2011) .......................................................... 2

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 2, 29

Atkore Int'l v. FAy, 18-cv-6308, 2018 U.S. Dist. LEXIS 202415 (N.D. Ill. Nov. 29, 2018)....... 22

*Baker v. Kingsley*, 387 F.3d 649 (7th Cir. 2004) ........................................................................ 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 2

*Call One, Inc. v. Anzine*, No. 18-cv-124, 2018 U.S. Dist. LEXIS 96169 (N.D. Ill. June 7, 2018) ...................................................................................................................................... 22

*Cambridge Eng'g, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437 (Ill. App. Ct. 2007) ................................................................................................................................ 20, 21

*Carlson v. Northrop Grumman Corp.*, 196 F. Supp. 3d 830 (N.D. Ill. 2016) ............................. 27

*Chamberlain Grp., Inc v. Techtronic Indus. N. Am.*, 2017 U.S. Dist. LEXIS 157301 (N.D. Ill. Sept. 26, 2017) .................................................................................................................. 27

*Chesemore v. Alliance Holdings, Inc.*, 770 F. Supp. 2d 950 (W.D. Wis. 2011) ......................... 10

*Coleman Clinic, Ltd., v. Massachusetts Mut. Life Ins. Co.*, 698 F. Supp. 740 (C.D. Ill. 1988) ... 15

*Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54 (4th Cir. 1992) .............................................. 10

*Cornielsen v. Infinium Capital Management, LLC*, 916 F.3d 589 (7th Cir. 2019)........................ 9

*Cross Wood Products, Inc. v. Suter*, 97 Ill. App. 3d 282 (Ill. App. Ct. 1981)............................. 28

*Daniels v. Bursey*, 313 F. Supp. 2d (N.D. Ill. 2004).................................................................... 18

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990) ................................................................ 7

*Dubis v. Zarins (In re Teranis)*, 128 F.3d 469 (7th Cir. 1997) .................................................... 31

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ............................................. 3, 4, 5, 6

*Eichmann v. National Hosp. & Health Care Servs.*, 308 Ill. App. 3d 337 (Ill. App. Ct. 1999) ... 22

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)....................................................................... 3

*Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254 (7th Cir. 1990)................................ 29

*Fryman v, Atlas Financial Holdings, Inc.*, 462 F. Supp. 3d 888 (N.D. Ill. 2020) ........................ 8

*Gibson v. City of Chicago*, 910 F.2d 1510 (7th Cir. 1990)............................................................ 2

*Godfrey v. Greatbanc Trust Co.*, No. 18-cv-79182020 U.S. Dist. LEXIS 150336 (N.D. Ill. 2020) ...................................................................................................................................... 18

*Gold v. Vasileff*, 160 Ill. App. 3d 125 (Ill. App. Ct. 1987) ........................................................ 24

*Harris Trust & Sav. Bank v. Salomon Smith Barney*, 530 U.S. 238 (2000) ............................... 18

*Herdrich v. Pegram*, 154 F.3d 362 (7th Cir. 1998) .................................................................... 12

*Hill v. Simmons*, 2017 IL App (1st) 160577-U .......................................................................... 30

*Hoffman v. Nationwide Mut. Ins. Co.*, No. 10-cv-3841, 2011 U.S. Dist. LEXIS 81575 (N.D. Ill. July 26, 2011)..................................................................................................................... 24

*Holt v. Massage Envy Franchising, LLC*, No. 3:16-cv-01087-DRH-SCW, 2017 U.S. Dist. LEXIS 90148 (S.D. Ill. June 19, 2017) ................................................................................... 23

*Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.,* 227 Ill. 2d 381 (2008) ....................... 31

*In re Calpine Corp. ERISA Litig.*, No. C-03-1685 SBA, 2005 U.S. Dist. LEXIS 9719 (N.D. Cal. 2005)................................................................................................................................. 16

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 2013 WL 6798160 (S.D.N.Y. 2013) ................ 16
*In re Williams Cos. ERISA Litigation*, 271 F. Supp. 2d 1328 (N.D. Okla. 2003) ........................ 11
*Keach v. United States Trust Co., N.A.*, 256 F. Supp. 2d. 828 (C.D. Ill. 2003)........................... 11
*LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008) ........................................ 12, 14
*Lax v. Mayorkas*, 20 F.4th 1178 (7th Cir. 2021)................................................................... 11
*Leigh v. Engle*, 727 F.2d 113 (7th Cir. 1984) ...................................................................... 11
*Massachusetts Mutual Life Insurance Company v. Russell*, 473 U.S. 134 (1985)...................... 13
*Massey v. Merrill Lynch & Co*., 464 F.3d 642 (7th Cir.2006)...................................................... 25
*McRand, Inc. v. Van Beelen*, 138 Ill. App. 3d 1045 (Ill. App. Ct. 1985) .................................... 21
*Medix Staffing Solutions, Inc. v. Dumrauf*, No. 17-cv-6648, 2018 U.S. Dist. LEXIS 64813
    (N.D. Ill. April 17, 2018) ........................................................................................ 20
*Meridian Funds Group Sec.*, 917 F. Supp. 2d 231 (S.D.N.Y. 2013)........................................... 18
*Merrilees v. Merrilees*, 2013 IL App (1st) 121897.................................................................. 30
*Miller v. Lay Trucking Co.*, 606 F. Supp. 2d 1326 (N.D. Ind. 1985) ......................................... 14
*Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694 (N.D. Ill. 2014) .................................. 23
*Moyaho v. Lucas*, 2004 U.S. Dist. LEXIS 6927 (N.D. Ill. 2004) .............................................. 12
*North Am. Plywood Corp. v. Oshkosh Trunk & Luggage Co.*, 263 F.2d 543 (7th Cir. 1959)...... 24
*Pegram v. Herdrich*, 530 U.S. 211 (2000)............................................................... 10, 12
*Rogers v. Baxter Int'l Inc.*, 521 F.3d 702 (7th Cir. 2008) ......................................................... 14
*Schulist v. Blue Cross of Iowa*, 717 F.2d 1127 (7th Cir. 1983) .................................................. 15
*SEC v. Bauer*, 723 F.3d 758 (2013) ..................................................................................... 9
*Tellabs v. Makor Issued & Rights*, 551 U.S. 308 (2007) ..................................................... 3, 9
*Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568 (1985)............................................... 16
*Tradesmen Int'l, Inc. v. Prof'l Labor Support, LLC*, No. 10-2098, 2011 U.S. Dist. LEXIS
    61633 (C.D. Ill. June 7, 2011) .................................................................................. 19
*Tuvia Convalescent Center, Inc. v. Nat'l Union of Hosp. and Health Care Employees*, 717 F.
    2d 726 (2nd Cir. 1983)............................................................................................ 15
*Uni\* Quality, Inc. v. Infotronx, Inc*., 974 F.2d 918 (7th Cir. 1992).............................................. 23
*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ......................................................................... 16
*Walsh v. Fensler*, No. 22-cv-1030, 2022 U.S. Dist. LEXIS 1340904 (N.D. Ill. 2020) ............... 18
*Wilhelm v. Beasley*, 2015 WL 8035967 (S.D.N.Y. 2015) ........................................................ 16
*Wsol v. Fiduciary Management Associates, Inc*., 266 F.3d 654 (7th Cir. 2001) ......................... 12

## Statutes

15 U.S.C. § 78(j) ............................................................................................................. 2
15 U.S.C. § 78u-4(b)(2) ................................................................................................... 9
29 U.S.C. 1002(3) ........................................................................................................... 19
29 U.S.C. 1109(a) ........................................................................................................... 10
29 U.S.C. 1132(a)(2) ................................................................................................. 12, 14
29 U.S.C. 1132(a)(3) ....................................................................................................... 17

## Other Authorities

ERISA Section 3(3) ......................................................................................................... 19
ERISA Section 404 .......................................................................................................... 14
ERISA Section 409(a) ................................................................................................ 12, 14
ERISA Section 502(a)(2) ............................................................................................ 12, 14
ERISA Section 502(a)(3) ...................................................................................... 17, 18, 19

Private Securities Litigation Reform Act of 1995 ....................................................... 9, 10

**Rules**

Fed. R. Civ. Pro. 12(b)(6) ................................................................................. 1, 2, 21
SEC Rule 10b-5 ............................................................................................ 2, 4, 5, 8
Fed. R. Civ. Pro. Rule 9(b) ....................................................................... 4, 8, 28, 37

**Regulations**

17 CFR § 240.10b-5 ........................................................................................................ 2

Defendants Craig Barone, Craig Robertson, Fred Dietz, Brian Jacob, Eric Meyer, Jason Strahm, and Brent Kieser (collectively "Defendants," "Resigning Defendants," or "Tendering Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully move this Court for an Order dismissing the Complaint because, as a matter of law, Plaintiff's allegations fall well short of that which is required by Rules 8 and 9 of the Federal Rules of Civil Procedure to state plausible claims. In support of its Motion to Dismiss, Defendants state as follows:

## I.       INTRODUCTION

Citing SEC Rule 10b-5, Sections 409(a), 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") (29 U.S.C. 1109(a), 1132(a)(2), and 1132(a)(3)), and Illinois common law, Plaintiff Advance Trading, Inc. ("Plaintiff or "ATI") has filed a 38-page, 243 paragraph, 13-count Complaint in which it alleges that Defendants violated federal securities laws, ERISA, and Illinois common law as a result of their resignation and transition to a new employer. (*See* Compl., generally). The lawsuit alleges widespread fraud and a conspiracy to harm ATI based on clearly lawful conduct. When ATI attempts to allege improper conduct, it does so by repeatedly alleging that upon/on "information and belief" Defendants engaged in certain conduct without once alleging plausible facts to provide context for such beliefs.

The Complaint is ripe for dismissal because it: (i) fails to satisfy the *Iqbal/Twombly*, *infra*, pleading standards; (ii) asserts claims that have been rejected by the courts; and/or (iii) fails to plead facts with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.

1

## II.    LEGAL STANDARD AND ARGUMENT

### A.    12(b)(6) Motion To Dismiss For Failure To State A Claim

A motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a Rule 12(b)(6) motion, a court must accept as true all well-pleaded facts in the plaintiff's complaint and draw all reasonable inferences from those facts in plaintiff's favor. *Anchor Bank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Therefore, to survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B.    Count I (against Dietz) And Count II (against Barone, Strahm, and Kieser) Should Be Dismissed Because Plaintiff Fails To State a Claim Under Federal Securities Law.

Plaintiff has failed to plead accusations of fraud with particularly and facts sufficient to plausible show proximate cause and/or scienter. To state a claim under Section 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C. 78(j)) ("the '34 Act") and Rule 10b-5 promulgated thereunder, a plaintiff must allege that a defendant knowingly made an "untrue statement of material fact or omit[ted] to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security." 17 CFR § 240.10b-5.  A plaintiff must plead accusations of fraud with particularity (*Anchorbank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (plaintiff must "describe the who, what, when, where, and how of the fraud"); allege that defendant's misstatement or omission was made with *scienter* (*Ernst & Ernst v. Hochfelder*,

425 U.S. 185 (1976) (higher mental state than mere negligence); *Tellabs v. Makor Issued & Rights*, 551 U.S. 308 (2007) (knowledge of falsity required); and further allege that a defendant's misstatement or omission was the proximate cause of plaintiff's loss. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).

Plaintiff claims that Defendants' failure to disclose an alleged plan to resign when four of them tendered their ATI shares caused it to pay more than the true value for those shares and further caused other employees to pay too much for the ESOP shares they purchased at the same price. Count I alleges that when other, unidentified ATI board members asked Dietz about the tenders, he failed to disclose the alleged plan and gave them false assurances. Compl., ¶¶ 59-60. Count II alleges that other tendering Defendants had a duty to disclose the alleged plan and acted fraudulently in failing to do so. Compl., ¶ 119.

ATI claims damages in the amount of $652,080 for the shares it purchased from the four selling defendants (Compl., ¶¶ 114, 123) and an additional $648,128 in damages for potential, unasserted claims against ATI by the employee-purchasers. Compl., ¶¶ 115, 124. Plaintiff's claims fail as to both Counts because they cannot show that the Defendants proximately caused it to incur a loss in purchasing their shares or a loss related to potential, unasserted claims. The Complaint also fails to allege fraud with the particularity required by procedure Rule 9(b) and SEC Rule 10b-5 and fails adequately to allege that Defendants acted with the required scienter. Accordingly, Counts I and II should be dismissed. Because the Complaint concedes that ATI has no evidence of the alleged true value of the shares at the time of the transaction, Plaintiffs cannot allege that Defendants proximately caused ATI to incur a loss. Because repleading would be fruitless, Counts I and II should be dismissed with prejudice.

## 1.     Plaintiff Fails to Allege that Defendants Proximately Caused a Loss.

On December 30, 2022, ATI purchased 660 shares from seven individuals and sold 656 shares to current employees at the same current appraisal price of $2,798 per share. Compl., ¶¶ 55, 57. Plaintiff alleges that the true value of the ATI shares at the time of the transactions was $1,810, based on a July 2023 appraisal that valued ATI as of March 31, 2023, over three months after the transaction. The Complaint alleges that the "primary" cause of the change in value was the Defendants' later departure in January 2023, alleged losses of largely unidentified customers to Apalis at unspecified times after the brokers' resigned, and the resulting impact on "long term profits". Compl., ¶ 70.

Plaintiff's claim that it suffered a loss is defective in several respects. First, although it claims to have overpaid for the 660 shares in the amount of $652,080, the Complaint makes clear that Plaintiff immediately sold all but four of those shares to employees at the exact same price selling shareholders received. Moreover, even as to those four shares, Plaintiff has not alleged that it ever sold those shares at a loss, let alone that it incurred a loss proximately caused by Defendants.

The Supreme Court decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), is dispositive of Plaintiff's 10b-5 damages claim here. In *Dura*, stock purchasers brought 10b-5 claims against the company and some of its managers and directors alleging that the defendants made false statements regarding expected FDA approval of a new asthmatic spray device, which caused fraudulent inflation in their purchase price. The District Court granted defendants' motion to dismiss on the ground that plaintiffs' general allegations of price inflation were insufficient to plead that the alleged misstatements caused economic loss. The Ninth Circuit reversed, holding that plaintiffs need only show that the price was inflated on the date of purchase. The Supreme Court then reversed the Ninth Circuit, relying on "the common-law

roots of the securities fraud action (and the common-law requirement that a plaintiff show actual damages.)," *i.e.* that the defendants' conduct proximately caused plaintiff's damages.  544 U.S. 336, at 344. The Court further noted the effect on stock price of later events, unrelated to the alleged fraud:

> For one thing, as a matter of pure logic, at the moment the transaction takes place, the plaintiff has suffered no loss; the inflated purchase payment is offset by ownership of a share that *at that instant* possesses equivalent value. Moreover, the logical link between the inflated share purchase price and any later economic loss is not invariably strong. Shares are normally purchased with an eye toward a later sale. . . .  If the purchaser sells later after the truth makes its way into the marketplace, an initially inflated purchase price *might* mean a later loss. But that is far from inevitably so. When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price. 544 U.S. at 342-43.

ATI has alleged *no fa*cts to show that it incurred an economic loss on the purchase of Defendants' shares on December 30, 2022, let alone that the purchase price was fraudulently inflated by Defendants' alleged omissions. To the contrary, Plaintiff's entire damage claim is based on an appraised value of its business that was performed over six months later, and that Plaintiff concedes estimates the value of ATI as of March 31, 2023, not the date of the transaction with Defendants. Compl., ¶¶ 68, 70. Plaintiff further admits that the lower, March 31 value was caused by "changed economic circumstances . . . , firm-specific facts, conditions, or other events" (*Dura Pharmaceuticals*, 544 U.S. at 343), namely the departure of certain brokers (including two who are not defendants here) and the later loss of largely unidentified customers, whose reasons for leaving are not supported by any factual allegations. Moreover, Plaintiff concedes that other factors may have impacted the later share value when it concedes that the

departures and lost customers were the "primary" – *i.e.* not the only – cause of the change. Compl., ¶70. In addition, the Complaint fails to allege facts to support ATI's claim that the March 31, 2023, value was in fact "reflective" of the value on December 30, 2022, or that March 31 was the earliest date for which a valuation was "practically ascertainable." Compl., ¶ 73.

Under the ATI Stock Transfer Restrictions and Shareholder Agreement ("Shareholder Agreement") attached as Exhibit D to the Complaint, if ATI believed at the time of tender that the most recent appraisal "did not accurately reflect the *current* value of ATI's stock," it had 30 days from the tender or employment termination to request an updated appraisal. Compl., Exhibit D, § 11(A) (emphasis supplied). The Complaint does not allege that ATI requested the March 31 appraisal within 30 days of the tenders or even within 30 days of the Defendants' resignations. Plaintiff's vague allegations in support of an appraised value that it concedes was affected at least in part by events unrelated to Defendants' alleged non-disclosure of their possible resignations and, therefore, did not reflect the current value as of December 30, 2022, fail to meet the requirements of both the Shareholder Agreement and *Dura Pharmaceutical*, and Counts I and II should therefore be dismissed.

By the same token, ATI cannot claim a 10b-5 loss related to its sale of shares to other employees. The Complaint does not allege that ATI has incurred a loss or facts sufficient to establish its standing to assert securities fraud claims related to its employees' purchase of purportedly over-valued stock. Indeed, the Complaint does not allege that any purchasing employees have even asserted claims, let alone that ATI has paid --or ever will pay-- employees for such claims. More importantly, Defendants were not parties to the sales to employees, they made no misstatements or omissions on which the purchasers could have relied, and the

Complaint does not allege that they were even aware of the sales. Accordingly, Defendants cannot be liable to ATI or the employees.

### 2. The Complaint Fails to Plead Fraud with Particularity.

Specificity in pleading fraud is required by procedure Rule 9(b) and SEC Rule 10b-5. In *DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990) the Court described the requirement to mean "the who, what, when, where, and how: the first paragraph of any newspaper story." *Id.* at 627. The Complaint's allegations in ¶¶ 94-101 that the Defendants knew that ATI would seek a new valuation because of the Resigning Defendants' collective "contribution to profits" and alleged intention to take their business with them to Apalis do not provide the necessary specificity. There are no factual allegations to show that the appraised value used for their sales was inaccurate at the time of the transactions and no allegations that Defendants knew of any possible inaccuracy. There are no allegations that each Defendant knew or recklessly disregarded information relating to their historic contributions to profit (as alleged in ¶¶ 94-100) or even whether that information was known by anyone at the time of the transactions. In addition, there are no factual allegations that Defendants knew or recklessly disregarded the specific customers that would later decide to leave ATI, when those unidentified customers would choose to do so, the impact the loss of specific customers would have on ATI's revenue, and whether the future, hypothetical loss of customers would materially impact the value of the shares they sold.

Plaintiff does not (and cannot) allege that the Defendants' departure was a certainty when the Count I and II Defendants tendered their shares. In fact, the Complaint concedes that Apalis was not licensed to do business until it became licensed a month later. Compl., ¶ 29. Nor does the Complaint allege that the impact of their potential departure on the share price was quantifiable as of the date of the transaction. To the contrary, it took ATI itself over six months

to put a value on their departure, and even that was flawed as well as speculative because the share price change included factors unrelated to Defendants' actions.

The pleadings here do not even rise to the specificity level of those that were found inadequate in *Fryman v, Atlas Financial Holdings, Inc.*, 462 F. Supp. 3d 888 (N.D. Ill. 2020). The *Fryman* plaintiffs brought 10b-5 claims against an insurance company and its officers alleging misstatements in the company's disclosures relating to the adequacy of its loss reserves, profits, and capital surplus, and its omissions relating to known trends. Defendants moved to dismiss for failure to plead fraud with specificity, among other things. The Court dismissed the complaint on grounds that conclusory allegations that the defendants had access to information relating to loss reserves merely asked the court to infer that defendants must have known the reserves were inadequate. *Id.* at 897. Plaintiffs failed to allege that defendants were aware of specific information that would call the company's disclosures into question. The Complaint here recites statistics relating to the Defendants' value to ATI derived from an analysis done six months later, but does not and cannot allege that Defendants were aware of such information at the time of the transaction and then fraudulently concealed their hope to leave ATI at some future date. *Fryman*, 462 F. Supp, 3d at 901 (applying same reasoning about failure to allege defendants' actual knowledge to dismiss allegations of fraudulent omissions).

Count I of the Complaint alleges that at the December 22, 2022, ATI Board meeting approving the purchase of some of the tendered shares, other directors asked Defendant Dietz "whether there was anything to be concerned about because so many employees asked to redeem such a large portion of their shares, which was unusual" and whether "there was anything they needed to be made aware of regarding Tendering Defendants all tendering significant portions of their stock."  ¶ 59. "Dietz responded each time in the negative, providing multiple reassurances

to the remaining board members that as far as he knew there was nothing ATI needed to know" regarding the tenders.  ¶ 60.  The Complaint's vague allegations of "multiple reassurances" provided to unidentified directors fail to allege with specificity what Dietz allegedly said in response to particular questions and thus fail to comply with the pleading requirements for securities fraud.

### 3.  Plaintiff Fails to Allege that Defendants Acted with Scienter.

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a securities plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" (15 U.S.C. § 78u-4(b)(2)), that is that *each* defendant intended to defraud ATI. *Cornielsen v. Infinium Capital Management, LLC*, 916 F.3d 589, 602 (7th Cir. 2019) ("plaintiffs must create a strong inference of scienter with respect to each individual defendant.") (internal quotations omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). The same lack of specificity that infected Plaintiff's fraud allegations are also fatal to its allegations of scienter. Count II of the Complaint simply says that "Defendants knew, or reasonably should have known, that had they disclosed the Resigning Defendants['] intended departure there would not have been any transactions in ATI shares until a new valuation was complete." Compl., ¶ 121. This allegation fails to meet the scienter requirement in at least two respects. First, it does not allege scienter as to each individual defendant, but rather lumps the three Defendants together. Second, in the absence of factual allegations of actual knowledge, ATI alleges alternatively that Defendants "reasonably should have known," thus applying a negligence standard rather than the mandatory recklessness standard required to allege scienter in the absence of evidence of allegations of actual knowledge. *SEC v. Bauer*, 723 F.3d 758, 775 (2013); *Sundstrand Corp. v. Sun Chemical, Corp.*, 553 F.2d 1033, 1039 (7th Cir. 1977).  Accordingly, Counts I and II should be dismissed for the

additional reason that they fail to plead scienter in accordance with the requirements of the PSLRA.

**C.**   **Count III (against Dietz) Should Be Dismissed Because Dietz Was Not Acting In A Fiduciary Capacity, Plaintiff Fails to Adequately Allege A Breach Of A Fiduciary Duty, Plaintiff Has No Standing To Sue Under ERISA 409(a), And Because the Claim is Not Ripe for Adjudication.**

**1.**   **Defendant Dietz was not Acting in a Fiduciary Capacity under ERISA when the Alleged Misrepresentation Occurred.**

Plaintiff brings Count III under ERISA Section 409(a) (29 U.S.C. 1109(a)), alleging a breach of fiduciary duty by Defendant Dietz. However, Plaintiff fails to plead sufficient facts to show that Defendant Dietz was acting in a fiduciary capacity when he allegedly breached that fiduciary duty.

A company's director when otherwise identified as a fiduciary to an ERISA plan may wear more than one hat: he may act as a fiduciary when exercising discretionary authority or control over the management of the plan or disposition of its assets, but not when he makes decisions as to the terms of a transaction involving the company that may impact the plan as well. *Chesemore v. Alliance Holdings, Inc.*, 770 F. Supp. 2d 950 (W.D. Wis. 2011). The key for purposes of determining fiduciary status is "whether [a] person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

The extent of a fiduciary's obligations is gleaned from and allocated by the plan documents. *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992). In this case, while the ESOP identifies the ATI Board of Directors as a "named fiduciary," it also significantly limits the role of the board of directors as a fiduciary by delegating to others nearly all administrative and discretionary authority, including the authority to purchase ATI shares from participants, interpret the ESOP, make disbursements, determine whether benefits will be

paid, value ATI shares, invest ESOP assets, and buy/sell ATI stock to the Administrative Committee and/or the ESOP Trustee. (*See* Ex. 1, §§ 1.8, 5.1b, 5.2, 11.1, 11.2, 12.2b).[1]

In other words, while Dietz may have been a member of the board of directors and the board of directors was identified as a "named fiduciary" under the ESOP, it is never alleged that Dietz, in his role as a director, exercised any authority as to the administration of the Plan itself, disposition of its assets, or purchase of stock by the ESOP, nor could he under the express terms of the ESOP. Thus, Dietz's fiduciary duties were necessarily limited, as neither he nor the Board of Directors had the authority to approve purchases or sales of shares by the ESOP. Rather, that authority primarily was vested in the Plan's Administrative Committee, which operated as a fiduciary to that extent. *See Keach v. United States Trust Co., N.A.*, 256 F. Supp. 2d. 828, 831 (C.D. Ill. 2003) (while board of directors may be responsible for selection of fiduciaries, its responsibility and liability is limited to such selection) (quoting *Leigh v. Engle*, 727 F.2d 113, 134 (7th Cir. 1984)); *In re Williams Cos. ERISA Litigation*, 271 F. Supp. 2d 1328, 1338-1339 (N.D. Okla. 2003) (where Board only had authority to appoint Benefits Committee, its fiduciary obligations could only extend to those acts).

To the extent that Dietz participated in a vote of the board of directors to purchase ATI stock from its shareholders in December 2022, he was not acting in a fiduciary capacity with respect to the ESOP. Indeed, it is not even alleged that such vote applied to shares held inside the ESOP. Plaintiff simply fails to allege that Dietz breached any duty assigned to the board of directors under the ESOP, the extent to which he was acting as a fiduciary, or that the board of

---

[1] Defendants may rely upon this document in moving for dismissal because ATI's case is premised on Defendants' alleged conduct impacting ATI's ESOP, which is central to the claims at issue and referenced more than four (4) dozen times in the Complaint. *Lax v. Mayorkas*, 20 F.4th 1178, fn. 1 (7th Cir. 2021) (courts may consider documents attached to a motion to dismiss when they are referenced in the complaint and central to the plaintiff's claims).

directors was exercising fiduciary duties under ERISA when it approved ATI's purchase of certain shares of stock (which may or may not have included shares held inside the ESOP). Instead, Plaintiff simply alleges that Dietz is personally liable under ERISA Section 409(a) by virtue of having a seat on the board and for a breach of duty that it fails to identify, and it in no way alleges facts suggesting that Dietz operated in a fiduciary capacity in the December 2022 meeting or that the board was exercising any fiduciary duty when it voted to approve the purchase of ATI stock.

### 2. Plaintiff Fails to Allege a Breach of Fiduciary Duty or one that Caused a Loss to the ESOP.

Even if Dietz were acting in a fiduciary capacity under ERISA, which he was not, Plaintiff fails to allege any particular fiduciary duty under ERISA that he may have breached that would give rise to the relief available under ERISA Section 409(a), and fails to allege a loss to the ESOP, thus, once again failing to state a claim for relief that is plausible on its face.

To establish a breach of fiduciary duty under ERISA, the complaint "must allege facts which set forth: (1) that the defendants are plan fiduciaries; (2) that the defendants breached their fiduciary duties; and (3) that a cognizable loss resulted." *Moyaho v. Lucas*, 2004 U.S. Dist. LEXIS 6927, at *7 (N.D. Ill. April 22, 2004) (citing *Herdrich v. Pegram*, 154 F.3d 362, 369 (7th Cir. 1998), *rev'd on other grounds*, 530 U.S. 211 (2000)); *see also Wsol v. Fiduciary Management Associates, Inc*., 266 F.3d 654, 656 (7th Cir. 2001) (breach of fiduciary duty must have "imposed a loss on the plan or generated a profit for [defendant] through use of assets of the plan by [defendant]"). ERISA Section 502(a)(2) (29 U.S.C. 1132(a)(2)), which is the only provision of ERISA that authorizes claims to enforce Section 409, provides a remedy only for losses to the plan. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254 (2008).

Starting with the requirement that a breach of fiduciary duty requires a loss to the ESOP, in *Massachusetts Mutual Life Insurance Company v. Russell*, 473 U.S. 134, 140, (1985), the U.S. Supreme Court made clear that any recovery for a breach of fiduciary duty under ERISA Section 409 must "be on behalf of the plan as a whole"  (holding that "recovery for a violation of § 409 inures to the benefit of the plan as a whole"). ATI is not only seeking hypothetical damages based on what it contends could be potential causes of action by shareholders (Compl., ¶135), but it also is seeking those damages on behalf of the Plaintiff, ATI (at least in part, if not entirely), not the ESOP as a whole. While Count III alleges that Dietz is personally liable under ERISA Section 409(a) "to make good to the ESOP such losses resulting from his fiduciary breaches" (Compl., ¶136), it never specifies any specific damages to the ESOP or claims recovery on behalf of the ESOP. Rather, Count III alleges that Dietz's breach caused "ATI, the ESOP, and ESOP participants to suffer losses by overpaying $648,128.00 for shares of ATI in December 2022", and as a result, ATI is "potentially obligated to compensate shareholders for those overpayments." Compl., ¶135. Potential obligations of ATI do not amount to losses to the ESOP. Plaintiff is conflating such hypothetical, "potential" damages associated with all stock purchases in December 2022 by ATI, with damages to the ESOP alone, and trying to bring all such losses under the guise of an ERISA fiduciary breach.

Not only was Dietz's approval of ATI's stock purchase not a fiduciary act, thus making it impossible to constitute a breach of fiduciary duty in any respect, Plaintiff has failed to identify any particular loss to the ESOP, let alone any facts that would support such an allegation against Dietz. Either one of those points alone should be sufficient to support this Court's dismissal of the Plaintiff's complaint for failure to state a sufficient, facially plausible claim.

But, in addition, Count III looks to ERISA Section 409(a) for relief, but fails to identify any statute that would give rise to such relief. Compl., ¶¶ 126, 136. To pursue a claim under ERISA Section 409(a), a plaintiff first needs a private right of action. *Rogers v. Baxter Int'l Inc.*, 521 F.3d 702, 704 (7th Cir. 2008). ERISA Section 409(a) does not provide a private right of action in and of itself; rather, liability under ERISA Section 409(a) can only by imposed by way of a breach of the fiduciary duties enumerated under ERISA Section 404 (29 U.S.C. 1104), and even then, only where the breach involves the misuse of plan assets. *Miller v. Lay Trucking Co.*, 606 F. Supp. 2d. 1326, 1338 (N.D. Ind. 1985). Here, Plaintiff has failed to allege that Dietz violated ERISA Section 404 or that he had access to and/or misused ESOP assets.

Further, the only mechanism by which Section 409(a) is enforced is by way of ERISA Section 502(a)(2) (29 U.S.C. 1132(a)(2)). *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 251 (2008). Plaintiff fails to even mention ERISA Section 502(a)(2) in Count III. In other words, by failing to identify Dietz's fiduciary obligation under ERISA Section 404, and how he breached any such obligation, thus giving rise to relief under Section 409(a) by way of ERISA Section 502(a)(2), and failing to allege that Dietz's alleged breach of fiduciary duty involved his use of ESOP assets, Plaintiff's claim must be dismissed for failing to state a claim for relief under ERISA Section 409(a) that is plausible on its face.

### 3. Plaintiff has no Standing to Sue under ERISA.

Plaintiff has no standing under ERISA to bring its claim. Even assuming that ATI is alleging a breach of a duty under ERISA Section 502(a)(2), ATI still has no standing to bring a claim under Section 502(a)(2) because it was not acting in a fiduciary capacity when the events allegedly giving rise to Count III took place, and it fails to assert that it is suing in connection with any such activity.

An employer's status as a fiduciary alone does not confer standing to sue under ERISA as a general matter, but "only to the extent that the employer is acting in a particular fiduciary capacity." *Coleman Clinic, Ltd., v. Massachusetts Mut. Life Ins. Co.*, 698 F. Supp. 740, 742 (C.D. Ill. 1988) (citing *Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131 (7th Cir. 1983)).  "It is well established that employers, as employers, do not have standing to sue under § 502(a)(2) of ERISA." *Id.* at 743 (citing *Tuvia Convalescent Center, Inc. v. Nat'l Union of Hosp. and Health Care Employees*, 717 F. 2d 726 (2nd Cir. 1983)).

The ESOP provides that ATI is a named fiduciary, but also specifies that named fiduciaries shall only have the specific powers, duties, responsibilities, and obligations as set forth under the ESOP. (Ex. 1, § 13.8). Here, it is not clear that ATI as the employer is specifically assigned any duties under the ESOP, let alone any duties that would amount to fiduciary duties giving it standing to bring Count III. To the extent that any such duties, responsibilities, or obligations of the Board of Directors can be attributed to ATI, even those duties are significantly limited, such that ATI has no authority under the ESOP to consent to the purchase of shares by the ESOP or conduct any other relevant fiduciary obligations. (Ex. 1, §§ 11.1, 11.2).

As a result, ATI was not and could not have been acting in a fiduciary capacity when the board agreed to repurchase and/or sell ATI stock at the December 2022 meeting, and therefore could not possibly be suing in connection with any activity as to which it was or could have been allegedly exercising a fiduciary function. Thus, ATI has no standing to sue as a fiduciary in this case under ERISA 409(a) and Count III should be dismissed for this reason as well.

### 4.      The Claim for Potential Damages is not Ripe.

As in any case, in the ERISA setting, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"

15

*Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580-581 (1985). In other words, where the "resolution of an issue turns on whether there are nebulous future events so contingent in nature that there is no certainty they will ever occur, the case is not ripe for adjudication." *Wilhelm v. Beasley*, 2015 WL 8035967, *21 (S.D.N.Y. 2015) (quoting *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 2013 WL 6798160, *22 (S.D.N.Y. 2013)).

Here, Plaintiff has not alleged any actual harm. Rather, in Count III Plaintiff only alleges that "ATI is *potentially* obligated to compensate shareholders" for overpayments. Compl., ¶ 135 (emphasis added); *see also* Counts I-II, VI-IX, and XII. Absent an actual obligation by ATI to currently compensate its shareholders—or, as mentioned above, a loss to the ESOP—even if Dietz violated any of his fiduciary duties, which he did not, this case is not ripe for adjudication.

### 5. A Failure to Disclose the Possibility that Some Employees may be Leaving if Certain Events came to pass would not amount to a Breach of Fiduciary Duty.

Count III alleges that Dietz breached his fiduciary duties primarily because he had a duty to disclose "all relevant information" to ATI and that he breached that duty by "misrepresenting to the Board that he was not aware of anything that the Board should be aware of" with regard to Defendants' potential departure. Compl., ¶¶ 129, 132. However, "there is no general fiduciary duty of disclosure under ERISA." *In re Calpine Corp. ERISA Litig.*, No. C-03-1685 SBA, 2005 U.S. Dist. LEXIS 9719, at *23 (N.D. Cal. March 30, 2005). Indeed, an affirmative duty to disclose only exists under ERISA to the extent that it relates to the disclosure of information about the plan, benefits, or expenses, and where a fiduciary is responding to participant inquiries. *Id.* at *23-24 (citing *Baker v. Kingsley*, 387 F.3d 649, 661-662 (7th Cir. 2004)); *see also Varity Corp. v. Howe*, 516 U.S. 489 (1996).

In other words, not only was Dietz not operating in a fiduciary capacity when he voted to approve ATI's purchase of its shares at the December 2022 meeting, even if he were, nothing

under ERISA required him to notify the board of potential future contingencies. The general fiduciary obligation to disclose under ERISA only extends to participant inquiries, not those of a board of directors with limited fiduciary duties, which is not acting in a fiduciary capacity. *See id*.

Because neither Dietz nor the Plaintiff in this case was operating in their fiduciary capacity when the events allegedly giving rise to the relief claimed under Count III took place, Plaintiff has no standing to sue and the claim under Count III is not ripe, and because the alleged breach of fiduciary duty could not constitute a breach, Count III of the Complaint must be dismissed under Rule 12(b)(6) for failing to state a plausible claim for which the relief sought is available.

   **D.    Count IV (against Dietz, Barone, Strahm, and Kieser) Should Be Dismissed Because Dietz Violated No Fiduciary Duties And Because the Defendants Against Whom Count IV Is Brought Cannot be Liable For The Claims Alleged.**

Plaintiff brings Count IV seeking disgorgement against Defendants Dietz, Barone, Strahm, and Kieser due to Dietz's alleged breach of fiduciary duties, but Plaintiff's attempt to use disgorgement as a recovery tool in this case is misplaced. Presumably Plaintiff's argument in this regard relies on its allegations under Count III, even though it references Count II in its Complaint. Compl., ⁋ 142. However, as demonstrated above, Dietz did not and could not violate any fiduciary duties, even if we were to accept the allegations in Count III as true. Because disgorgement under ERISA Section 502(a)(3) (29 U.S.C. 1132(a)(3)) requires a breach of fiduciary duty under ERISA, the claim under Count IV necessarily fails and must be dismissed, as it is premised on a breach of fiduciary duty that could not have occurred.

Moreover, even if this Court were not inclined to dismiss this Count based on the foregoing legal argument, dismissal would still be appropriate because "as to fiduciaries,

disgorgement is a remedy for breach of fiduciary duty, not a separate cause of action." *In re Meridian Funds Group Sec.*, 917 F. Supp. 2d 231, 241 (S.D.N.Y. 2013). As a result, Count IV as it relates to Dietz, is duplicative of Count III, and should be dismissed for that reason as well.

Count IV must be dismissed as to Defendants Barone, Strahm, and Kieser because those three Defendants were not even alleged to be knowing participants in any such alleged fiduciary breach. ERISA Section 502(a)(3), under which Plaintiff brings Count IV, authorizes suits against non-fiduciaries who knowingly participate in violations of ERISA for appropriate equitable relief, which may include disgorgement. *See Harris Trust & Sav. Bank v. Salomon Smith Barney*, 530 U.S. 238, 246-247 (2000)). A "knowing participant" claim under ERISA 502(a)(3) requires the plaintiff to allege a breach of fiduciary duty and that a defendant "knowingly participated in the conduct that constituted" the fiduciary breach. *Godfrey v. Greatbanc Trust Co.*, No. 18-cv-7918, 2020 U.S. Dist. LEXIS 150336, at *33 (N.D. Ill. August 19, 2020). "Under *Harris*, a claim under §502(a)(3) against a non-fiduciary essentially asserts that the non-fiduciary aided and abetted the fiduciary's breach." *Walsh v. Fensler*, No. 22-cv-1030, 2022 U.S. Dist. LEXIS 140904 (N.D. Ill. August 8, 2022) (quoting *Daniels v. Bursey*, 313 F. Supp. 2d (N.D. Ill. 2004)).

Here, there is nothing in Count IV that even approaches an allegation that Defendants Barone, Strahm, and Kieser participated in Dietz's alleged fiduciary breach, or that they aided and abetted such alleged breach; nor could they have possibly done so given the alleged breach. As a result, Count IV, as it relates to those Defendants, must be dismissed for failing to state a plausible claim for which relief can be granted.

In addition, and at the very least, the portion of Count IV that seeks disgorgement under ERISA from Strahm and Kieser must be dismissed because the alleged transactions related to those parties had absolutely nothing to do with the ESOP. Those transactions only related to ATI

stock purchased by ATI *outside* of the ESOP. Compl., ¶¶ 56, 146, 147. As mentioned, disgorgement provides a remedy under ERISA 502(a)(3) against non-fiduciaries who knowingly participate in violations of ERISA. Plaintiff never alleges that the purchase of ATI stock outside of the ESOP involved the ESOP or an ERISA plan, nor could it.

To the extent that Count IV relates to ATI's purchase of stock from Strahm and Kieser, it only relates to transactions in which ATI purchased shares *outside* of the ESOP, and thus no ERISA plan was involved, and no claim can be asserted thereunder for violation of ERISA. These transactions had nothing to do with an ERISA plan (as defined in ERISA Section 3(3) (29 U.S.C. 1002(3)), and therefore, no relief under ERISA 502(a)(3) for such transactions could possibly be available. As a result, Count IV, as it relates to Strahm and Kieser must be dismissed for that reason alone.

### E. Count V (against Dietz, Meyer, and Jacob) Should Be Dismissed Because The Restrictive Covenants At Issue Are Unenforceable, There Has Been No Plausible Claim Pled, And Blue Penciling Is Not Appropriate.

#### 1. Dietz' Non-Compete is Facially Unenforceable.

The reasonableness of provisions of a non-compete agreement is a question of law. *Tradesmen Int'l, Inc. v. Prof'l Labor Support, LLC*, No. 10-2098, 2011 U.S. Dist. LEXIS 61633, at *8 (C.D. Ill. June 7, 2011). Nevertheless, Defendants concede that Rule 12(b)(6) motion practice usually is not the stage at which to attack the enforceability of post-employment restrictive covenants unless, as is this case here, the restriction being challenged is patently unreasonable. *Allied Waste Servs. of N. Am., LLC v. Tibble*, 177 F. Supp. 3d 1103, 1110 (N.D. Ill. 2016) ("[U]nless the covenant is patently unreasonable, the parties must be given a full opportunity to develop the necessary evidentiary record."). Here, Dietz is the only broker who has a non-compete provision in a post-employment covenant. Compl., Exhibits A-C. Dietz's non-compete is patently unreasonable because, in prohibiting him from working at "any business

competitive with that of ATI" without any further limitations on prohibited activities, it would prevent him from being hired in any positions (from janitor to customer service) with any company in the same industry as Plaintiff. Compl., ⁋ 21; Ex. A. Thus, nothing in the non-compete limits Dietz's post-employment activities to the same activities he performed for ATI.

In *Medix Staffing Solutions, Inc. v. Dumrauf*, No. 17-cv-6648, 2018 U.S. Dist. LEXIS 64813 (N.D. Ill. April 17, 2018) the district court started its analysis by recognizing that Illinois law disfavors restrictive covenants. *Id*. at *5. The non-compete provision at issue in *Dumrauf* barred the defendant from being employed in any capacity within 50 miles of the former employer by any company that worked in the same fields as the former employer, regardless of whether the future employer was actually a competitor or not, *i.e*., offered some non-competitive services. The district court dismissed the former employer's claim because the activities restriction was facially overbroad and no amount of discovery was going to change the express language of that provision. *Id*. at *6-7 (holding that while a bit far-fetched, nothing in this broad language would allow defendant to serve as a janitor for a competitive business); *see also Cambridge Eng'g, Inc. v. Mercury Partners 90 BI, Inc*., 378 Ill. App. 3d 437, 452 (Ill. App. Ct. 2007) (an employer cannot prevent an employee from working for a competitor "in an entirely noncompetitive capacity.").

In dismissing the entire non-compete claim at the pleading stage, the *Dumrauf* district court found that "there are positions that fit under that restriction that are competitive with Medix but in no way relate to the work Dumrauf did while at Medix. Without some connection to the work he did at Medix, this restriction cannot possibly serve to protect a legitimate business interest of Medix and is in essence an impermissible restriction on competition *per se*." *Id*. at *9.

    **2.    The Non-solicitation Provisions in Dietz, Meyer, and Jacob's Agreements are Unenforceable because they are Facially Overbroad.**

The non-solicitation provisions in Meyer and Jacob's restrictive covenant are identical and bar them from soliciting any ATI customer, regardless of whether they had any interaction with that customer. Compl., Exhibit B, ¶ 13(A); Exhibit C, ¶ 13(A).[2] These same non-solicitation provisions bar them from soliciting any potential customer of ATI. Compl., Exhibit B, ¶ 13(B); Exhibit C, ¶ 13(B). The more broad non-solicitation language in these agreement prohibit the solicitation of potential clients including any individual or entity "irrespective of whether the individual, organization, or entity was identified through leads or contacts developed during the course or term of Employee's employment with ATI." (Exhibit B, ¶ 15; Exhibit C, ¶ 15).

The non-solicitation provisions in Dietz's restrictive covenant bar him from soliciting ATI's customers, regardless of whether Dietz ever had any interactions with such customers and regardless of whether ATI had performed services for such customers in the last 20 years, and bars him from soliciting any potential customer if such potential customers were identified through leads or contacts developed at any point during the course of his near 20-year employment at ATI. Compl., Exhibit A, para 4; *see also* Compl., ¶ 11.

Illinois "[c]ourts are hesitant to enforce prohibitions against an employee's servicing not only customers with whom they had direct contact, but also customers they never solicited or had contact with while employed by plaintiff." *McRand, Inc. v. Van Beelen*, 138 Ill. App. 3d 1045, 1057 (Ill. App. Ct. 1985) (collecting cases); *see also Cambridge Eng'g, Inc*., 378 Ill. Ap. 3d 437 at 461 ("A nonsolicitation clause is only valid if 'reasonably related to the employer's interest in protecting customer relations that its employees developed while working for the employer.' As a result, courts are reluctant to enforce provisions that prohibit former employees from servicing customers that they never had contact with while working for their original employer."). Against

---

[2] The Complaint completely misidentifies the language in both Meyer and Jacob's agreements. *Compare* Para. 22 to Exhibit B; *compare also* Para. 23 to Exhibit C.

this backdrop, in *Atkore Int'l v. Fay*, the district court dismissed without the need for discovery a breach of contract claim barring the defendant from soliciting customers and potential customers the defendant had not interacted with during his prior employment. No. 18-cv-6308, 2018 U.S. Dist. LEXIS 202415, at *10-11 (N.D. Ill. Nov. 29, 2018). Because the non-solicitation provisions at issue are facially overbroad, they bar ordinary competition in contravention of Illinois law. *Call One, Inc. v. Anzine*, No. 18-cv-124, 2018 U.S. Dist. LEXIS 96169, at *17-18 (N.D. Ill. June 7, 2018) (motion to dismiss granted and non-solicitation agreement unenforceable where it, among other things, it barred the defendant from soliciting and servicing customers the defendant had never interacted with).

### 3.    Plaintiff has Failed to Plead a Viable Breach of Contract Claim.

For the sake of brevity, Defendants refer the Court to Section II(I)(2), *infra*, for a discussion on why the Complaint fails to plead a viable breach of contract claim.

### 4.    Blue penciling should not be Available.

Outright dismissal of the breach of contract claims is appropriate because Dietz's agreement prohibits any modification of the agreement without his express authorization. Compl., Exhibit A, ¶ 11. Jacob's and Meyer's agreements, likewise, do not provide for reformation and instead mandate the complete elimination of unenforceable provisions, *i.e.*, the entire non-solicitation provision. Compl., Exhibits B & C, ¶ 13. While not having an express blue penciling clause does not foreclose a court's ability to reform an unenforceable restrictive covenant, "modification could have the potential effect of discouraging the narrow and precise draftsmanship which should be reflected in written agreements." *Eichmann v. National Hosp. & Health Care Servs.*, 308 Ill. App. 3d 337, 347-48 (Ill. App. Ct. 1999) (no blue penciling is appropriate where the proposed revisions would be "tantamount to fashioning a new agreement"); *see also Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 718 (N.D. Ill.

2014) (motion to dismiss granted and finding that blue penciling "restrictive covenants gives employers an incentive to draft them as broadly as possible, subsequently relying on courts to amend and enforce them").

**F.  Count VI (against Dietz) And Count VII (against Dietz, Barone, Strahm, and Kieser) Should Be Dismissed Because Alleged Fraudulent Representations About Future Conduct Are Not Actionable And Because There Is No Duty To Provide Advance Notice Of The Termination Of At-Will Employment.**

**1.  Rule 9(b) Required more of Plaintiff.**

As a threshold matter, "Rule 9(b)'s particularity requirement serves an important purpose. Accusations of fraud can seriously harm a business. . . Rule 9(b) ensures that a plaintiff have some basis for his accusations of fraud before making those accusations and thus discourages people from including such accusations in complaints simply to gain leverage for settlement or for other ulterior purposes." *Uni\* Quality, Inc. v. Infotronx, Inc*., 974 F.2d 918, 924 (7th Cir. 1992) (affirming the dismissal of the fraud claims and holding that allowing a complaint to continue when it is supported by mere "flimsy" allegations would do Rule 9(b) a disservice). Therefore, when a claim of fraud is premised on or upon "information and belief," the plaintiff must explain why the information is not currently known to it and must state the basis for its beliefs. *Id*. at 924. Here, Plaintiff has pled either upon or on "information and belief" at least seven times in support of its wide-ranging conspiracy theory without even *once* explaining why the information is not currently known to it and the basis for its unsupported beliefs. Simply put, "Rule 9(b) requires plaintiffs to engage in deeper investigation prior to filing suit to combat the inherently prejudicial and reputation damaging effects of a fraud based lawsuit. . ." *Holt v. Massage Envy Franchising, LLC*, No. 3:16-cv-01087-DRH-SCW, 2017 U.S. Dist. LEXIS 90148, at \*20-21 (S.D. Ill. June 19, 2017). Here, almost a year passed between the events alleged

by Plaintiff and the filing of its lawsuit, and it appears no extensive investigation into the fraud claims has taken place during that extended period.

### 2. Plaintiff's Fraud by Affirmative Representation Claim is Fatally Premised on Dietz's Representations about Future Events.

Plaintiff's fraud by affirmative representation claim is based on Dietz's representation that he did not know that there was anything to be concerned about when asked in December 2022 about a handful of employees seeking to sell shares of stock when he allegedly knew that he and other brokers would be resigning sometime in the future to compete against ATI. Compl., ¶¶ 59-60, 162. In Illinois, however, misrepresentations about future conduct are not actionable as a matter of law, as only past or existing facts are actionable. *See*, *e.g.*, *North Am. Plywood Corp. v. Oshkosh Trunk & Luggage Co.*, 263 F.2d 543, 545 (7th Cir. 1959); *Hoffman v. Nationwide Mut. Ins. Co.*, No. 10-cv-3841, 2011 U.S. Dist. LEXIS 81575, at *21-22 (N.D. Ill. July 26, 2011); *Gold v. Vasileff*, 160 Ill. App. 3d 125, 128 (Ill. App. Ct. 1987) ("[A] misrepresentation about events to occur in the future cannot constitute the tort of fraud. The representation must be to an existing or past fact."). Furthermore, as Plaintiff concedes, Apalis did not even apply for a brokerage license through the National Futures Association ("NFA") until December 2022 (Compl., ¶ 34) and Defendants did not resign from ATI until after Apalis was later approved by NFA as a brokerage firm. (Compl., ¶ 34, 36). Thus, at the time of Dietz's response to questioning, he could not have known that the Defendants were departing a month later, there were no concrete facts to report, and his representation was therefore accurate at that time.

### 3. Plaintiff's Fraud by Concealment Claim is Fatally Defective because the Defendants were At-Will Employees who had no Duty to Provide Advance Notice of their Resignations.

Plaintiff's fraud by concealment claim is primarily premised on the allegation that the "Defendants intentionally failed to disclose their planned impending departure from employment

at ATI." Compl., ¶ 176. Only three of the Defendants had employment contracts, and each of those three contracts were expressly for at-will employment relationships. Compl., Exhibit A (¶2); Exhibit B (¶4); Exhibit C (¶4). The other four Defendants had no contracts with ATI whatsoever. There is no obligation in Illinois that requires an employee to provide advance notice that the employee will be resigning at some point in the near future. Therefore, this claim has no basis in law or fact.

### G. Count VIII (against Dietz) Should Be Dismissed For Not Satisfying Rule 9(b) And Because The Facts Admitted By Plaintiff Defeat Its Claim.

#### 1. Plaintiff has pled itself out of Court.

This Court has warned plaintiffs in the past that "the Seventh Circuit has acknowledged that a party may plead itself out of court by including factual allegations that establish an impenetrable defense to its claims." *Adams v. City of Peoria*, No. 14-1415, 2015 U.S. Dist. LEXIS 142456, at *11 (C.D. Ill. Jan. 9, 2015) (J., Mihm) (citing *Massey v. Merrill Lynch & Co*., 464 F.3d 642, 650 (7th Cir.2006)). Plaintiff alleges that Dietz breached his fiduciary duties by not disclosing that he and other brokers would be resigning prior to the December 2022 stock transaction, by making plans with the other Defendants to resign and work for a competitor, planning to leave ATI and solicit ATI customers for his new employer, recruiting customers to leave ATI prior to his departure, not disclosing employees' plan to leave in the future when asked whether there was anything to be concerned about, gauging the interest in new employment opportunities for co-workers, and voting to approve the December 2022 stock transaction. Compl., ¶ 187.

Plaintiff, however, also admits the following: ATI only purchases stock in December of every year (Compl., ¶ 45); it is customary for ATI shareholders to tender some of their shares for repurchase by the Company contemporaneously with ATI's offering of shares for purchase

(Compl., ¶ 51); Defendants offered to sell only 532 out of the 1,709 shares of stock they collectively owned in December 2022; of the 532 shares offered for purchase by Defendants, ATI only purchased 213 shares from Defendants, which was only 12% of the shares collectively owned by Defendants and 40% of the shares offered for purchase by Defendants (Compl., ¶¶ 53-55); ATI purchased 447 shares from three individuals who are not parties to this litigation (Compl., ¶ 56); Apalis did not apply to become a licensed and registered brokerage firm until December 5, 2022; the NFA did not approve that license application until January 25, 2023 (Compl., ¶ 34); and none of the Defendants resigned until after Apalis received its license from the NFA (Compl., ¶ 36).

Those admissions establish that four of the seven Defendants offered only a fraction (12%) of Defendants' collectively-owned stock for repurchase in December during the only time of the year ATI purchases shares in the ordinary course. Thus, there was nothing unusual about four of the seven Defendants tendering a small portion of their collective shares. Plaintiff's admissions also show that Apalis did not even apply for its brokerage license until December 2022, which was the same month as the usual annual stock transactions, and that Defendants only resigned after that application was approved. Thus, at the time of the stock transaction, it is undisputed that Dietz only knew that ATI was contemplating the purchase of 660 shares, which included only 213 shares from Defendants, in the ordinary course of annual stock transactions. Furthermore, at best, Dietz believed that at some unknown point in the future Apalis's application to become a registered brokerage firm would be either rejected or granted. The facts alleged in the Complaint establish that there was no predetermined timeframe for when, if ever, any of the Defendants would be separating from ATI to work for a company that was not even able to hire any of Defendants as brokers when the events at issue unfolded. Except for the

allegation that Dietz actively recruited customers prior to his resignation, which is discussed below, the remaining allegations are nothing more than lawful planning activities.

### 2. Rule 9(b) Mandates the dismissal of this Claim.

Rule 9(b) heightened pleading standards are triggered when a breach of fiduciary duty claim is tied to allegations of fraud. *Carlson v. Northrop Grumman Corp*., 196 F. Supp. 3d 830, 837 (N.D. Ill. 2016). Here, the only allegation suggesting that Dietz violated his fiduciary duties under Illinois common law is that he allegedly recruited customers before his resignation. Because this serious accusation is part of a larger scheme of alleged fraud, Rule 9(b) requires Plaintiff to plead the who, what, when and where facts supporting this claim or, in the alternative, explain why those facts are still unknown after nearly a year after Defendants' separation from ATI, which has access to its clients who used to be serviced by Dietz – there is no allegation that he attempted (successful or otherwise) to solicit any particular customer.

In *Chamberlain Grp., Inc v. Techtronic Indus. N. Am*., 2017 U.S. Dist. LEXIS 157301 (N.D. Ill. Sept. 26, 2017), the district court granted the new employer and former employee's motion to dismiss based on Rule 9(b) pleading standards where the plaintiff had not expressly alleged a fraud claim, but had alleged fraudulent conduct, in connection with an alleged breach of fiduciary duties claim. That claim was tied to the former employee allegedly soliciting a particular customer that was named in the complaint. *Id*. at \*27 ("there are no allegations that [defendant's] solicitation of the Chamberlain customer led to any loss of business by Chamberlain; for all we know, the solicitation was entirely unsuccessful. If the breach did not impact the customer's relationship with Chamberlain, it is hard to see any harm stemming from this breach").

Here, Plaintiff has not alleged with specificity that Dietz solicited *any* specific ATI customer *during or after* his employment with Plaintiff. Nor has Plaintiff alleged specific profit

losses tied to specific customers in connection to any conduct complained of by Dietz. Dismissal, therefore, is appropriate.

> **H.      Count IX (against Barone, Strahm, Kieser) And Count X (against all Defendants) Should Be Dismissed Because Preparing To Compete Is Lawful Conduct in the State of Illinois.**

Count IX of the Complaint asserts that Barone, Strahm, Kieser, and the corporate defendants induced a breach of the duty of loyalty in alleging that Apalis was formed to compete against Plaintiff, the Defendants and other ATI employees contemplated separating from ATI, a large number of clients left ATI within two weeks of the Defendants' separations, Apalis was assisted by one of the Defendants in recruiting ATI employees for the new venture, and certain Defendants tendered a similar number of shares for redemptions by ATI. Compl., ¶¶ 196 – 219. Likewise, Count X of the Complaint alleges that Dietz, Barone, Robertson, Jacob, Meyer, Strahm, and Kieser all actively engaged in recruiting co-workers to leave employment, and that certain clients of ATI left for Apalis shortly after Defendants' departure.

These allegations are deficient, as Illinois law allows employees to be considered for new job opportunities by competitors, to form rival companies, and to even outfit that rival company with equipment and supplies while still complying with their duty of loyalty to their then current employer. *Cross Wood Products, Inc. v. Suter*, 97 Ill. App. 3d 282, 285 (Ill. App. Ct. 1981). Similarly, nothing prevented Kieser or any other Defendants, who did not have an employment contract, from gauging the interest in new employment opportunities of certain ATI employees. Plaintiff's assertions about co-defendant Apalis and the departure of clients from ATI amount to nothing more than ordinary, lawful competition. As a result, Counts IX and X are deficient and should be dismissed.

I. **Count XI (against all Defendants) Should Be Dismissed Because The Three Restrictive Covenants At Issue Are Unenforceable And No Actionable Breach Has Been Alleged.**

1. **Dietz, Jacob, and Meyer's Restrictive Covenants are Unenforceable.**

For the sake of brevity, Defendants refer the Court to the arguments set forth in Section II(E), *supra*, for a discussion on why the restrictive covenants at issue are unenforceable. Because there are no valid contracts at issue, Plaintiff's inducement claim cannot stand.

2. **No Actionable Breach of Contract has been Plausibly alleged.**

An inducement claim cannot be viable where there has been no breach of the underlying contract. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). Here, Defendants resigned from their employment at ATI in January 2023, and this lawsuit was not filed until nine months later. Docket Entry 1. According to Plaintiff, ATI lost 144 customers within two weeks of the January 2023 departures of Defendants. Compl., ¶ 216. However, even after having nearly a year to prepare its 240 plus paragraph, 38-page Complaint, Plaintiff fails to plead even one fact plausibly suggesting that Dietz, Jacob and/or Meyer engaged in any conduct prohibited by their agreements even though ATI has direct access to scores of clients who were previously serviced by Defendants and who did not take their business away from ATI. Although a plaintiff is not required to go into great detail to satisfy the pleading standard, *Iqbal* requires more than unsupported conclusions. In other words, this claim is not plausible because a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility, however, "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 662. Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient. *Id.* Plaintiff has not offered a single fact (beyond insufficient "somebody did me wrong" unsupported conclusions) to

plausibly suggest that there has been a breach of contract by any of the Defendants, let alone Dietz, Jacob, and Meyer.

**J.**    **Count XII (against all Defendants) Should Be Dismissed Because The Complaint Fails To Plead Viable Anchoring Claims In Support Of The Civil Conspiracy Claim.**

To state a claim for civil conspiracy, a plaintiff must allege facts establishing that: (1) the defendant entered into an agreement with one or more persons to accomplish by concerted action either an unlawful purpose or a lawful purpose by unlawful means; (2) a tortious act was committed in furtherance of the agreement; and (3) the plaintiff suffered an injury that was caused by the defendant. *Hill v. Simmons*, 2017 IL App (1st) 160577-U, ¶ 44. However, "[b]ecause conspiracy is not an independent tort, if a plaintiff fails to state an independent cause of action underlying [the] conspiracy allegations, the claim for conspiracy also fails." *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 49. Here, as established above, each of the underlying causes of action in this lawsuit fail as a matter of law for failing to satisfy Rules 8 and/or 9.

**K.**    **Count XIII (against all Defendants) should be Dismissed because it is not an Actionable Claim and is not a viable Remedy in this Matter.**

**1.**    **A Constructive Trust is not an independent claim.**

A "constructive trust is a remedy, and not a claim, and therefore cannot stand as a separate cause of action." *3Com Corp. v. Electronic Recovery Specialists, Inc*., 104 F. Supp. 2d 932, 942 (N.D. Ill. 2000) (dismissing the constructive trust as an independent claim and collecting cases). Thus, Count XIII must be dismissed as an independent basis for liability.

**2.**    **Plaintiff has failed to Plead sufficient facts to support a remedy of Constructive Trust.**

As a remedy, a constructive trust may be appropriate "where there is a breach of fiduciary duty or when fraud is proven." *3Com Corp.*, 104 F. Supp. 2d at 942. A party seeking a constructive trust must establish the elements of unjust enrichment and that the benefit to the

30

other party was obtained by means of actual or constructive fraud, duress, abuse of confidential relationship, mistake, commission of a wrong or other unconscionable conduct. *Dubis v. Zarins (In re Teranis),* 128 F.3d 469, 473 (7th Cir. 1997). A constructive trust is an equitable remedy that may be imposed only in limited circumstances to prevent unjust enrichment. *Id.* Like Count XII, Count XIII must be pled with specificity. Rule 9(b).[3]

Despite this heightened pleading standard, in Count XIII, Plaintiff merely alleges that the corporate defendants and their employees (Defendants) engage in ordinary competition with ATI. Compl., ¶¶ 239 - 241. However, the Illinois Supreme Court in *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.,* 227 Ill. 2d 381, 392 (2008) explained that: "Under Illinois law, commercial competitors are privileged to interfere with one another's prospective business relationships provided their intent is, at least in part, to further their businesses and is not solely motivated by spite or ill will."

Here, Count XIII should be dismissed because it is devoid of any allegations of unjust enrichment, that Defendants obtained any benefit as a result of actual or constructive fraud, duress, abuse of confidential relationship, mistake, commission of a wrong or other unconscionable conduct, and that Defendants are solely motivated by spite or ill will.

## III.  CONCLUSION

For the reasons stated above, and those set forth in the Motion to Dismiss, Defendants respectfully submit that the Complaint should be dismissed in the entirety, or in the alternative, dismissed as to Defendants Craig Barone, Craig Robertson, Fred Dietz, Brian Jacob, Eric Meyer, Jason Strahm, and Brent Kieser.

---

[3] Defendants' argument in this section largely follows the argument raised by the corporate defendants and Mr. Endress. Docket Entry No. 23 (Argument No. 4).

Dated: January 19, 2024                   Respectfully submitted,

                                          CRAIG BARONE, CRAIG ROBERTSON,
                                          FRED DIETZ, BRIAN JACOB, ERIC
                                          MEYER, JASON STRAHM, and BRENT
                                          KIESER

                                          By: ____/s/ Brian K. Jackson_____

Brian K. Jackson
Chad DeGroot
LANER MUCHIN, LTD.
515 North State Street, Suite 2400
Chicago, IL 60654
(312) 467-9800 / (312) 467-9429 (fax)

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I, Brian K. Jackson, an attorney, hereby certify that on January 19, 2024, I caused to be served a copy of the foregoing in the above-captioned matter to be filed with the Clerk of the District Court and served on the parties of record, including those listed below, by operation of the Court's CM/ECF electronic filing system, addressed to:

> Michael G. Butts
> Wood, DeVary, Armstrong & Houska, P.C.
> 207 West Jefferson Street, Suite 400
> Bloomington, Illinois 61701
> mbutts@wdalawyers.com
> Phone: (309) 827-0044
> Fax: (309) 829-0328

> /s/ *Brian K. Jackson*
> Brian K. Jackson

33