IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ADVANCE TRADING, INC., an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 1:23-cv-01390 |
| CRAIG BARONE, CRAIG ROBERTSON, FRED DIETZ, BRIAN JACOB, ERIC MEYER, JASON STRAHM, BRENT KIESER, AUSTIN ENDRESS, APALIS, LLC, and APALIS COMMODITIES, LLC, an Illinois Limited Liability Company, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

Introduction..................................................................................................................1

ARGUMENT.................................................................................................................1

I.THE CLAIMED BREACH OF CONTRACT SHOULD BE DISMISSED................................1

II.THE DEFAMATION CLAIMS FAIL AS A MATTER OF LAW ..............................................4

    A.    Counterclaim Plaintiffs Have Failed To State A Claim For Defamation Per Se For Statements Imputing The Commission Of A Crime ....................................5

    B.    Counterclaim-Plaintiffs Have Failed To State A Claim For Defamation Per Se Related To Statements Concerning Their Professional Ability....................6

    C.    The Alleged Statements Are Opinion, And Are Protected By the First Amendment..................................................................................................7

III.THE BREACH OF FIDUCIARY DUTY CLAIM IS DEFECTIVE ........................................8

IV.THE SECOND BREACH OF FIDUCIARY DUTY CLAIM ALSO FAILS...........................9

V.FAILURE TO SUPPLY REQUESTED INFORMATION MUST BE DISMISSED...............10

CONCLUSION.............................................................................................................12

Page(s)

Cases

*Bryson v. News America Publ'ns, Inc.*,
   174 Ill.2d 77, 672 N.E.2d 1207 (1996) ...................................................................... 4

*Clark v. Hewitt Assoc.*,
   294 F. Supp. 2d 946 (N.D. Ill 2003) .......................................................................... 8

*Coghlan v. Beck*,
   984 N.E.2d 132 (Ill.App.Ct.2013) ............................................................................. 6

*Dual-Temp of Ill., Inc. v. Hench Control, Inc.*,
   821 F.3d 866 (7th Cir. 2016) ..................................................................................... 3

*Dubinsky v. United Airlines Master Exec. Council*,
   303 Ill.App.3d 317 (1999) ..................................................................................... 5, 7

*Edgewater Med. Ctr. v. Edgewater Prop. Co.*,
   373 B.R. 845 (Bankr. N.D. Ill. 2007) ........................................................................ 3

*Green v. Rogers*,
   234 Ill.2d 478 (2009) ................................................................................................. 4

*Harsch v. Eisenberg*,
   956 F.2d 651 (7th Cir. 1992) ................................................................................... 10

*Hess v. Hartford Life & Acc. Ins. Co.*,
   91 F. Supp. 2d 1215 (C.D. Ill. 2000) ...................................................................... 10

*Hopewell v. Vitullo*,
   299 Ill.App.3d 513 (1998) ..................................................................................... 6, 7

*Horrell v. Merrill Lynch, Pierce, Fenner, & Smith Inc.*,
   2006 WL 2735448 (N.D.Ill. Sep. 22, 2006) .............................................................. 6

*Jacobson v. Gimbel*,
   986 N.E.2d 1262 (2d Dist. Mar. 27, 2013) ................................................................ 7

*Kapotas v. Better Gov't Ass'n*,
   30 N.E.3d 572 (1st Dist. 2015). ................................................................................ 6

*Kleinhans v. Lisle Sav. & Profit Sharing Trust*,
    810 F.2d 618 (7th Cir. 1987) ................................................................................ 10

*Krasinski v. United Parcel Service, Inc.*,
    124 Ill.2d 483 (1988) ........................................................................................ 4

*Kross v. Western Electric Co.*,
    701 F.2d 1238 (7th Cir, 1983) ............................................................................ 9

*Lansing v. Carrol,*
    2015 WL 3962345  (U.S. Dist. N.D. Ill 2015)................................................. 4, 5, 6

*Lifton v. Bd. of Educ. of the City of Chicago*,
    416 F.3d 571 (7th Cir.2005) ............................................................................... 6

*Lindemann v. Mobil Oil Corp.*,
    79 F.3d 647 (7th Cir. 1996) .............................................................................. 11

*Madison v. Frazier*,
    539 F.3d 646 (7th Cir.2008) ............................................................................... 4

*Makis v. Area Publ'ns Corp.*,
    77 Ill.App.3d 452 (1979) .................................................................................... 6

*Moore v. People for the Ethical Treatment of Animals, Inc.,*
    402 Ill.App.3d 62, 932 N.E.2d 448 342 Ill.Dec. 321 (1st Dist. 2010)...................... 5

*Neuma v Wells Fargo & Co.*,
    515 F. Supp 2d 825 (N.D. Ill. 2006) ................................................................... 8

*Reger Dev., LLC v. National City Bank*,
    593 F.3d 759 (7th Cir. 2010) (applying Illinois Law) ........................................... 3

*RLI Ins. Co. v. Briggs*,
    2024 WL 124377 (C.D. Ill. Jan. 5, 2024) ........................................................... 3

*Robyns v. Reliance Standard Life Ins. Co.*,
    130 F.3d 1231 (7th Cir. 1997) ........................................................................ 9, 11

*Schaffer v. Zekman*,
    196 Ill.App.3d 727 (1990) .................................................................................. 5

*Schivarelli v. CBS, INC* 3,
    33 Ill.App.3d 755 (1st Dist. 2002) ...................................................................... 7

*Van Der Molen v. Washington Mutual Finance, Inc.*,
    359 Ill. App. 3d 813 (1st Dist. 2005) ....................................................................................... 3

*Wilczynski v. Lumberman's Mut. Cas. Co.*,
    93 F.3d 397 (7th Cir. 1996) ................................................................................................. 11

NOW COMES the Plaintiff, ADVANCE TRADING, INC. ("ATI"), an Illinois Corporation, by and through its attorneys, Wood, DeVary, Armstrong & Houska, P.C., and for its Memorandum in Support of its Motion to Dismiss the Counterclaims of Defendants and Counterclaim Plaintiffs, Craig Barone ("Barone"), Craig Robertson ("Robertson"), Fred Dietz ("Dietz"), Brian Jacob ("Jacob"), Eric Meyer ("Meyer"), Jason Strahm ("Strahm"), and Brent Kieser ("Kieser") (collectively, the "Counterclaim Plaintiffs"), and respectfully states as follows:

### Introduction

On October 13, 2023, plaintiff in the above-captioned matter filed a thirteen count Complaint ("Compl.") [Docket Entry 1] against the Counterclaim Plaintiffs and several other defendants.  On January 19, 2024, the Counterclaim Plaintiffs filed an Answer to that Complaint, which included five counterclaims. [Docket Entry 26]

These counterclaims include: (1) breach of contract, relating to the Advance Trading, Inc. Stock Transfer Restriction and Shareholder Agreement ("Shareholder Agreement"), (2) defamation per se; (3) breach of fiduciary duty under ERISA for allegedly failing to follow plan terms; (4) breach of fiduciary duty under ERISA relating to valuation; and (5) breach of fiduciary duty under ERISA for allegedly failing to provide certain information.

For the reasons set forth below, each of these counterclaims should be dismissed.

### ARGUMENT

### I.    THE CLAIMED BREACH OF CONTRACT SHOULD BE DISMISSED

As set out in the Counterclaim, ATI sponsored an ESOP, governed by ERISA, that was originally set up as a profit sharing plan.  Counterclaim ¶¶ 6-9. Certain employees were provided shares of ATI stock both inside and outside the ESOP, including the Counterclaim Plaintiffs. *Id*. ¶ 27.  On or about December 21, 2022, Kieser and Strahm tendered certain shares to ATI for

repurchase.  *Id.* ¶ 28.   ATI repurchased 47 shares from Kieser and 74 shares from Strahm (approximately 42% and 87% of the shares each tendered, respectively). Id. ¶ 29. Barone, Dietz and Strahm also tendered shares held inside the ESOP, of which ATI purchased 40%, 40% and 0% of those tendered, respectively. *Id.* ¶¶ 45-46.

Since their resignation, Counterclaim Plaintiffs continue to hold shares of ATI outside of the ESOP. *Id.* ¶ 38. Some time after they resigned ATI conducted an additional valuation, which reduced the assessed valuation of ATI shares to $1,810 per share, which was approximately a 35% reduction from the prior valuation. *Id.* ¶¶ 53-54.

As a result of the Counterclaim Plaintiffs' wrongful absconding of ATI business to Apalis, LLC and Apalis Commodities, LLC (collectively, the "Apalis entities"), ATI's profits have significantly declined. The ESOP Trustee had to conduct an additional valuation to take these facts into account, which determined there had been a diminution in the price of ATI shares. Counterclaim ¶¶ 51-57.

As set out in the Counterclaims, since their resignation, ATI has not purchased any shares held inside the ESOP from any of Barone, Kieser, Dietz, Strahm or Robertson. Counterclaim ¶¶ 63-65.

Counterclaim Plaintiffs contend that the Shareholder Agreement requires that, within 90 days after the resignation or termination of an employee, ATI must repurchase the shares held *outside* of the ESOP, and at a price of $2,798 per share. That, they contend, ATI has failed to do. Counterclaim ¶¶ 76-79. Nor has ATI paid them dividends on the shares they hold. Counterclaim ¶ 80. Thus, they claim ATI breached the provisions of the Shareholder Agreement.

For the reasons set forth below, the allegations setting out this claim fail and must be

dismissed.

First, this claim must be dismissed as it is precluded by the very terms of the Shareholder

Agreement. Paragraph 13 of the Shareholder Agreement requires that "[a]ny legal action arising

from or in any way related to this Agreement shall *only* be filed, pursued or maintained, in the

Circuit Court of McLean County, Illinois." Compl. Ex. D at pp. 6-7 (emphasis supplied). As this

court held just a few weeks ago, such forum selection clauses, when coupled with Illinois choice

of law, are enforceable. *RLI Ins. Co. v. Briggs*, 2024 WL 124377 (C.D. Ill. Jan. 5, 2024).

Second, Counterclaim Plaintiffs fail to allege the required elements of a breach of contact

claim. To succeed on a breach of contract theory, a plaintiff must prove (i) the existence of a

valid and enforceable contract; (ii) performance by the plaintiff; (iii) breach of the contract by

the defendant; and (iv) resultant injury to the plaintiff. *E.g., Burkhart v. Wolf Motors of*

*Naperville*, 2016 IL App. (2d) 15103, ¶ 14. *See also Dual-Temp of Ill., Inc. v. Hench Control,*

*Inc.*, 821 F.3d 866, 869 (7th Cir. 2016) (citing *Reger Dev., LLC v. National City Bank*, 593 F.3d

759, 764 (7th Cir. 2010) (applying Illinois Law). The plaintiff has the burden of establishing

each element by a preponderance of the evidence. *Edgewater Med. Ctr. v. Edgewater Prop. Co.*,

373 B.R. 845, 856 (Bankr. N.D. Ill. 2007) (citing *Van Der Molen v. Washington Mutual Finance,*

*Inc.*, 359 Ill. App. 3d 813 (1st Dist. 2005)). The Counterclaim Plaintiffs however have failed to

allege facts that would, if true, establish their performance under the contract at issue. Paragraph

12 of the Shareholder Agreement requires that shareholders "perform all acts and execute all

documents necessary to fully implement and carry out the terms and provisions of this

Agreement." Compl. Ex. D at p. 6. The Counterclaim Plaintiffs have not alleged that they

executed all required documents, nor could they as no such documents were submitted.

Because the Counterclaim Plaintiffs have not alleged adequate performance, they cannot claim ATI breached the agreement.

Accordingly, because Counterclaim Plaintiffs have not stated a claim for Breach of Contract and because this claim is brought in an improper venue, this Court should dismiss Counterclaim Count I.

## II.     THE DEFAMATION CLAIMS FAIL AS A MATTER OF LAW

Counterclaim Plaintiffs brought a claim against ATI for defamation *per se* regarding comments allegedly made to then ATI clients that some of the Counterclaim Plaintiffs were "going to jail" and "not doing well". Counterclaim ¶¶ 72-73, 84-87. These statements do not meet the requirements for a claim of defamation per se.

In Illinois, defamation is "the publication of any statement that 'tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with [him].' *Lansing v. Carrol,* 2015 WL 3962345 2 (U.S. Dist. N.D. Ill 2015) citing *Madison v. Frazier*, 539 F.3d 646, 652–53 (7th Cir.2008). To succeed on a defamation claim, the plaintiff must prove: (1) that the defendant made a false statement concerning the plaintiff; (2) that there was an unprivileged publication of the defamatory statement to a third party; and (3) that the plaintiff suffered damages as a result. *Id.* (citing *Madison* 539 F.3d 653); *see also Green v. Rogers*, 234 Ill.2d 478, 491 (2009) (citing *Krasinski v. United Parcel Service, Inc.,* 124 Ill.2d 483, 490 (1988)).

In certain limited cases, however, a plaintiff need not prove actual damages in order to recover because the statements "are so obviously and materially harmful" to the plaintiff's

4

reputation that his injury may be presumed.  *Madison*, 539 F.3d at 653 (quoting *Bryson v. News America Publ'ns, Inc.*, 174 Ill.2d 77, 672 N.E.2d 1207, 1214 (1996))

For a statement to qualify as defamatory, it must be able to meet *all* required elements on its own.  Extrinsic facts cannot be used in support of a claim for defamation per se to provide the context needed to make the statements actionable as defamatory.  *Id* at 4, citing *Dubinsky v. United Airlines Master Exec. Council*, 303 Ill.App.3d 317, 323 (1999) (explaining that a statement is defamatory per se only if "extrinsic facts are not needed to explain it" (citing *Schaffer v. Zekman*, 196 Ill.App.3d 727, 731 (1990)).  If the words spoken do not convey sufficient detail to be actionable, they cannot form the basis for a claim for defamation.

### A.   Counterclaim Plaintiffs Have Failed To State A Claim For Defamation Per Se For Statements Imputing The Commission Of A Crime

Counterclaim Plaintiffs claim these statements qualify as defamation per se because they impute the commission of a crime, and purportedly impugn their professional ability. This assertion, however, is neither supported by the facts alleged, nor by the applicable case law. The statements on their own are merely generic, and do not provide contextual details to the level needed to state a claim under Illinois defamation law.

Under applicable Illinois case law, statements that a party is "going to jail" cannot form the basis for a claim of defamation *per se*.  To the contrary: to constitute defamation *per se* based on imputing the commission of a crime, " 'the crime must be an indictable one, involving moral turpitude and punishable by death or by imprisonment in lieu of a fine.' " *Moore v. People for the Ethical Treatment of Animals, Inc.,* 402 Ill.App.3d 62, 69, 932 N.E.2d 448, 456 342 Ill.Dec. 321, 329 (1st Dist. 2010) " 'While the words charging the commission of a crime need not meet the technical requirements that are necessary for an indictment, the words must fairly impute the

commission of a crime.' *Id.*

As Illinois courts have held: "To be actionable as defamation per se (in the commission-of-a-crime category), a statement must directly or expressly accuse the plaintiff of committing a **specific crime**." *Lansing*, 2015 WL 3962345 8 (emphasis supplied). *See also Dubinsky*, 303 Ill.App.3d at 327 (requiring direct accusation of a crime); *Kapotas v. Better Gov't Ass'n*, 30 N.E.3d 572, 590 (1st Dist. 2015), (requiring an express accusation); *Coghlan v. Beck*, 984 N.E.2d 132, 148 (Ill.App.Ct.2013) (observing that a statement would be actionable as defamation per se if it imputed the commission of "a specific crime") (citation omitted); *Makis v. Area Publ'ns Corp.*, 77 Ill.App.3d 452, 458 (1979) (explaining that a suggestion of criminal conduct is merely hypothetical—and so not actionable per se —where it "does not impute any act or specific criminal conduct to [the] plaintiff").  As alleged, the statements do not rise to the required level of defamation per se, it does not name a specific crime, and simple generic statements of criminal conduct of the kind alleged here are like the ones such as those found not to be actionable in *Makis v. Area*.  Therefore the statements relied upon by Counterclaim Plaintiffs cannot sustain a claim for defamation and this claim must be dismissed.

B.       **Counterclaim-Plaintiffs Have Failed To State A Claim For Defamation Per Se Related To Statements Concerning Their Professional Ability**

To be actionable per se in the profession-or-business category, typically a statement must "relate to job performance." *Lansing v. Carrol,* 2015 WL 3962345, *5 (N.D. Ill. June 29, 2015) (internal citations omitted) (noting that attacks on "personal integrity" and "character" are insufficient). As *Lansing* noted, these statements must contain sufficient detail and facts in order to be actionable. *Id.*, at *7.  *See also  Lifton v. Bd. of Educ. of the City of Chicago*, 416 F.3d 571, 578–79 (7th Cir.2005) (references to the plaintiff as "lazy" and "unstable" were non-actionable

opinions); *accord Hopewell v. Vitullo*, 299 Ill.App.3d 513, 519 (1998) ("Regardless of the fact that 'incompetent' is an easily understood term, its broad scope renders it [imprecise]; one person's idea of when one reaches the threshold of incompetence will vary from the next person's."); *Horrell v. Merrill Lynch*, *Pierce, Fenner, & Smith Inc*., 2006 WL 2735448, at \*6 (N.D.Ill. Sep. 22, 2006) ("[The] statement that 'Mike Horrell and his work associates were dirty people' ... is the sort of name-calling not actionable under Illinois law....").

The statements that Counterclaim-Plaintiffs were "not doing well" is directly comparable (and even milder) to the "incompetent" statements in *Hopewell* and similar other statements from the cases listed above.  As such, the statements alleged cannot sustain a claim for defamation per se for statement related to Counterclaim-Plaintiffs' professional abilities, and the claim should be dismissed.

## C. The Alleged Statements Are Opinion, And Are Protected By the First Amendment

The statements alleged to have constituted defamation per se are not only non-actionable for the reasons set forth above, they are also protected by the First Amendment.  Statements like these are protected as opinion. *Jacobson v. Gimbel,* 986 N.E.2d 1262, 1272 (2d Dist. Mar. 27, 2013). Thus, "the First Amendment prohibits defamation actions based on loose, figurative language that no reasonable person would believe presented facts." *Id.* To determine whether an alleged defamatory statement is protected under the First Amendment, or whether it can be reasonably interpreted as stating actual facts, the emphasis is on whether it contains an objectively verifiable assertion. *Id.*  Generally, where an alleged defamatory statement lacks a specific factual context, the statement is not objectively verifiable and is a nonactionable opinion. *Id.*  Even a statement as extreme as "Ask Mark Jacobson about Stuart's death, he

7

helped him" is not actionable because it lacks enough context to be construed to be stating facts. *Id.* at 1272 (relying on *Schivarelli v. CBS, INC* 333 Ill.App.3d 755, 776 (1ˢᵗ Dist. 2002)). *See also Dubinsky v. United Airlines Master Executive Council,* 303 Ill.App.3d 317, 329-30 (calling plaintiff a crook is not actionable) .

Here, the statements that the Counterclaim-Plaintiffs are "going to jail" and are "not doing well" do not rise to the level of other statements – e.g. that someone helped their husband kill themselves, that someone was cheating the city, or was a crook – that Illinois courts have found not to be actionable.  They are devoid of factual context and are statements made with loose, figurative language.  As such they are protected by the First Amendment, and Counterclaim Plaintiffs' claims for defamation per se fall on this ground as well.

**III.    THE BREACH OF FIDUCIARY DUTY CLAIM IS DEFECTIVE**

In Count III, the Counterclaim Plaintiffs assert a breach of fiduciary duty claim based on ATI's alleged failure to follow plan terms. Counterclaim ⁋⁋ 89-99. Thus, Counterclaim Plaintiffs claim that they are entitled to the benefit under the ESOP that would result if ATI or the ESOP purchased their ESOP shares in December 2022.

Regardless of whether or not these allegations are factually correct, this Count still fails. First, any such claim must be brought under ERISA's claim for benefits provision, contained in ERISA Section 502(a)(1)(B), rather than ERISA Section 502(a)(3). Furthermore, the law forbids such claims from being brought judicially unless and until administrative remedies are exhausted.

A plaintiff cannot proceed under ERISA Section 502(a)(3) if he or she can state a claim for recovery of benefits under Section 502(a)(1)(B). *E.g., Neuma v Wells Fargo & Co.*, 515 F.

Supp 2d 825, 843 (N.D. Ill. 2006) (citations omitted).  If a plaintiff has adequate redress for a claim through his right to bring suit under ERISA Section 502(a)(1), he has no claim for breach of fiduciary duty under Section 502(a)(3).  *Clark v. Hewitt Assoc.*, 294 F. Supp. 2d 946, 950 (N.D. Ill 2003).

Accordingly, if Counterclaim Plaintiffs have a remedy at all for the Plan benefits they seek, it must be brought under ERISA Section 502(a)(1)(B). However, before that can be done, they should first seek relief through the Plan's administrative claims procedure.  This Court may properly require the exhaustion of administrative remedies before a plaintiff may file a claim alleging the violation of an ERISA statutory provision.  *See Robyns v. Reliance Standard Life Ins. Co.,* 130 F.3d 1231, 1235 (7th Cir. 1997) (citations omitted).  There is a strong federal policy encouraging private resolution of ERSA-related disputes.  *Kross v. Western Electric Co*., 701 F.2d 1238, 1244 (7th Cir, 1983). Implementing the exhaustion requirement enhances the ability of plan fiduciaries to expertly and efficiently manage their plans by preventing premature judicial intervention and because fully considered actions by plan fiduciaries may assist the courts when they must resolve controversies.  *Id.*

Counterclaim Plaintiffs have not made a claim for benefits under the claims procedure provisions set forth in Sections  11.6 and 11.7 of the ESOP.  Accordingly, this Court should dismiss Count III not only because it is not brought as a claim for benefits, but also because Counter-Plaintiffs have failed to exhaust administrative remedies.

## IV.    THE SECOND BREACH OF FIDUCIARY DUTY CLAIM ALSO FAILS

Count IV, like Count III, is nothing more than a claim for benefits.   Counterclaim

Plaintiffs believe they are entitled to an ESOP benefit they would have received had ATI not had the March 31, 2023 valuation conducted. That March 31, 2023 valuation showed a material diminution in share value as a result of Counterclaim Plaintiffs misconduct and breach of their contractual and fiduciary duties toward ATI.

Accordingly, this Court should dismiss Count IV because it is not properly brought as a benefits claim under ERISA Section 501(a)(1)(B). Furthermore, Counterclaim Plaintiffs have the ability to question the March 2023 valuation or any other matter relevant to their claim for benefits though the administrative claims process. They have not done so, and as a result of their failure to exhaust their administrative remedies, this Court should also dismiss Count IV on that basis, as set forth above in the discussion of Count III.

## V.    FAILURE TO SUPPLY REQUESTED INFORMATION MUST BE DISMISSED

Count V asserts a claim for breach of fiduciary duty under ERISA Section 104(b)(4), premised on ATI's alleged failure to properly respond to a request for information made by some plan participants. For the reasons set forth below, this Court should dismiss this Count for failure to exhaust administrative remedies.

Rather than provide any authority to support their ERISA 104(b)(4) position or submit a claim for benefits, on January 19, Counterclaim Plaintiffs filed the Counterclaim containing Count V, misrepresenting in Paragraph 71 that the ESOP has not responded to their disputed requests since December 20 correspondence.

In determining whether to award a penalty for disclosure violations under ERISA, a court should consider the conduct and intent of the administrator in not providing the relevant information, and the harm or prejudice suffered by the participant from the administrator's

failure to furnish the required information. *Hess v. Hartford Life & Acc. Ins. Co.,* 91 F. Supp. 2d 1215, 1224 (C.D. Ill. 2000) (citing *Harsch v. Eisenberg*, 956 F.2d 651, 662 (7th Cir. 1992), *cert. denied*, 506 U.S. 818 (1992); *Kleinhans v. Lisle Sav. & Profit Sharing Trust*, 810 F.2d 618, 622 (7th Cir. 1987)).  Bad faith is one factor that the court can properly consider in exercising its discretion to impose an ERISA Section 104(b)(4) penalty. *Hess*, 91 F. Supp. 2d at 1224.

Here, Counterclaim Plaintiffs have not alleged any harm or prejudice that any participant has suffered as a result of their not receiving any material they have requested, nor have Counterclaim Plaintiffs alleged any bad faith. Accordingly, this Court should dismiss this count for failure to state a claim.

Furthermore, this is a situation that calls for this Court to dismiss this Count for failure to exhaust and remand it to the ESOP Administrative Committee for further administrative proceedings.

The Seventh Circuit has held that a district court may properly require the exhaustion of administrative remedies before a plaintiff may file a claim alleging the violation of an ERISA statutory provision. *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1235 (7th Cir. 1997) (citing *Wilczynski v. Lumberman's Mut. Cas. Co.*, 93 F.3d 397, 401 (7th Cir. 1996)). "Congress's apparent intent in mandating internal claims procedures found in ERISA was to minimize the number of frivolous lawsuits, promote a non-adversarial dispute resolution process, and decrease the cost and time of claims settlement." *Id.* (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996)).  According to the *Robyns* court, plaintiffs would frustrate this intent if they could circumvent ERISA's administrative remedies. *Robyns*, 130 F.3d at 1235.

11

Here, Counterclaim Plaintiffs attempted to short circuit the administrative remedy process by prematurely filing Count V. This Court should dismiss this Count and allow the process to conclude.

## CONCLUSION

For the above stated reasons, the Counter-Defendant, Advance Trading, Inc., respectfully requests this Court to dismiss the Counterclaims of Counterclaim Plaintiffs Barone, Robertson, Dietz, Jacob, Meyer, Strahm, and Kieser with prejudice, and for such other and further relief as this Court deems just and appropriate.

<div style="margin-left:50%">

Respectfully submitted,
ADVANCE TRADING, INC.,
an Illinois Corporation

/s/ Michael G. Butts_____
Michael G. Butts, its attorney

</div>

Michael G. Butts
ARDC: 6308683
Wood, DeVary, Armstrong & Houska, P.C.
207 W. Jefferson St., Ste. 400
Bloomington, IL 61701
309-827-0044
mbutts@wdalawyers.com

12